**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **WILSON RAMOS, As Administrator of the** | : | **CIV. NO.3:16cv166(VLB)** |
| **Estate of Jose A. Maldonado and** | : | |
| **individually,** | : | |
| **Plaintiff,** | : | |
| **vs.** | : | |
| | : | |
| **TOWN OF EAST HARTFORD, OFFICER** | : | |
| **JASON KAPLAN, SERGEANT JAMES LIS,** | : | |
| **OFFICER JASON COHEN, and CHIEF** | : | |
| **SCOTT SANSOM OF THE EAST HARTFORD** | : | |
| **POLICE DEPARTMENT,** | : | **MARCH 14, 2018** |
| **Defendants.** | | |

**DEFENDANT OFFICER JASON KAPLAN'S**
**MEMORANDUM IN SUPPORT OF HIS MOTION FOR LEAVE TO**
**WITHDRAW HIS INVOCATION OF THE FIFTH AMENDMENT AND**
<u>**FOR PROTECTIVE ORDER**</u>

**I.     <u>PRELIMINARY STATEMENT</u>**

Defendant East Hartford Police Officer Jason Kaplan ("Officer Kaplan")

respectfully submits this memorandum in support of his motion for leave to withdraw

the prior invocation of his Fifth Amendment privilege.  Officer Kaplan also submits this

memorandum in support of his motion for a protective order: (i) barring the

dissemination of his deposition testimony and transcript concerning the specific

matters implicating his Fifth Amendment rights to third parties; (ii) barring plaintiff's

counsel from commenting on such matters, outside the context of a judicial proceeding

in this action; (iii) precluding plaintiff's counsel from mentioning or commenting on

during trial in the presence of the jury Officer Kaplan's invocation of the Fifth Amendment; and (iv) restricting use of his deposition testimony and transcript by the parties to the prosecution or defense of this civil action and submission of such testimony under seal.[1]

As demonstrated below, Officer Kaplan initially invoked his Fifth Amendment privilege in response to certain interrogatories due to a genuine and reasonable fear of criminal prosecution, stemming from the incident underlying this action.  However, due to the extensive discovery conducted in this matter, the good faith invocation of the privilege by Officer Kaplan and the fact that Kaplan did not assert this privilege at his deposition in this case, plaintiff has not and will not suffer prejudice from the proposed withdrawal, and Officer Kaplan's motion should be granted.  In addition, there is "good cause" for the issuance of a protective order, as, absent the requested protection, Officer Kaplan will be unfairly punished for the good faith reliance on his constitutional rights.

II.   **FACTUAL BACKGROUND**

A.   **PLAINTIFF'S COMPLAINT**

This action arises from incidents that occurred on April 12, 2014 and April 13, 2014, in which the plaintiff, Wilson Ramos, and his decedent, Jose Maldonado, were

---

[1] Kaplan does not seek to restrict access to judicial documents or to any aspects of trial.

arrested by officers of the East Hartford Police Department and subsequently incarcerated at the East Hartford Police Department.  Amended Compl. ¶¶ 13-22. Ramos and Maldonado were brothers.  Id. ¶ 7.  In the course of placing Ramos in a holding cell in which Maldonado had already been placed, Maldonado become extremely combative, and Officer Kaplan was required to deploy his Taser at Maldonado to neutralize the threat presented by him.  See id. ¶¶ 24-25.  Maldonado subsequently died.  Id. ¶ 31.

Plaintiff Ramos individually and as Administrator of the Estate of Jose Maldonado (collectively, "plaintiff") brings federal and state law claims for the alleged unlawful, excessive, racially discriminatory, negligent and reckless use of force by the defendants.  Officer Kaplan has denied the material allegations of the Amended Complaint and has asserted that plaintiff has failed to state claims upon which relief may be granted; that he is protected by qualified and governmental immunity; that any use of force was justified; and that the plaintiff and his decedent were contributorily negligent.  See, Answer, Doc. 14, 05/19/16.

B.     THE CRIMINAL INVESTIGATIONS

Following Maldonado's death, the Hartford State's Attorney, Gail Hardy, requested the Connecticut State Police Central District Major Crimes Squad ("CSP")  to investigate the force the defendant officers used on Maldonado.  This investigation was initiated pursuant to Connecticut General Statutes § 51-277a.  During the pendency of

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

the investigation, Officer Kaplan was under a realistic threat of prosecution for potential state and federal criminal offenses.  In June 2017, Attorney Hardy issued a report detailing the findings of the CSP investigation and confirming the lawfulness of the force challenged in this action.  Hardy Report, attached hereto as Ex. A.

Consequently, at the time Officer Kaplan was required to answer certain interrogatories, there was a legitimate concern of criminal prosecution such that invoking the privileges of the Fifth Amendment was required; however, because Attorney Hardy's report has cleared Kaplan from state prosecution, the likelihood of criminal prosecution has appreciably lessened, especially considering that the statute of limitations relating to any misdemeanor has long since lapsed.  Nonetheless, the threat of prosecution has not fully dissipated.

C.    PROCEDURAL POSTURE

On April 12, 2016, plaintiff served Officer Kaplan and other co-defendants with interrogatories and requests for production (the "Discovery Requests").   Thereafter, on June 13, 2016, Officer Kaplan timely objected to certain of the Discovery Requests [Doc. 22-1].  Predecessor counsel for Kaplan then engaged in a good faith conference concerning the objections, through which certain disputes were resolved.  Despite efforts to resolve the disputes without judicial intervention, on July 25, 2016, plaintiff moved the Court for an order compelling Officer Kaplan to comply with certain Discovery Requests.  Following objection from Kaplan and a reply from plaintiff, the

Court granted in part and denied in part plaintiff's motion [Doc. 37].  Specifically, those

interrogatories asked:

> No. 2. Identify every employee of the East Hartford Police
> Department who responded to or investigated the incident
> leading to the arrest and detention of Wilson Ramos and Jose
> Maldonado. For each such employee, describe in detail the
> nature and extent of the involvement at the scene of the
> incident or investigating the incident ....
>
> No. 8. Describe in detail the reasons for deploying a Taser on
> Jose Maldonado and include the following:
>
> > a.   The circumstances that led the officer(s) to
> >      believe it was necessary to deploy a Taser on
> >      Jose Maldonado;
> >
> > b.   Whether Jose Maldonado was given a warning
> >      prior to the deployment of the Taser and, if so,
> >      what was said by whom;
> >
> > c.   How long and how many times the Taser was
> >      deployed on Jose Maldonado; and
> >
> > d.   The present location and custodian of the Taser
> >      deployed on Jose Maldonado.

Ex. B, at 4, 6.  Though Kaplan maintained his objections invoking Fifth Amendment

protections as to those two interrogatories, he nonetheless provided certain responsive

information in accordance with the Court's ruling.  Kaplan Amended Discovery

Responses, attached hereto as Ex. B; see Ramos v. Town of East Hartford, Civ. No.

3:16-cv-166 (VLB), 2016 WL 7340282, at *2-4 (D. Conn. Dec. 19, 2016).

On December 28, 2017, Officer Kaplan was deposed by plaintiff's counsel.  In that deposition, Kaplan did not invoke his Fifth Amendment privileges, but rather answered each question put to him.  He was deposed from 11:23 a.m. until 6:22 p.m. on that day, resulting in approximately 260 pages of sworn deposition testimony.  The officer's testimony covered a myriad of subject matters, including training, past law enforcement experience and his conduct on the date in question.

III.   **ARGUMENT**

A.   **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 26(c)(1), upon a showing of good cause, a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  In achieving this goal, a court may, <u>inter alia</u>, limit the scope of disclosure of certain discovery matters.  Fed. R. Civ. P. 26(c)(1)(D).  It is well-settled that a court has "substantial latitude to fashion protective orders."  <u>DaCosta v. City of Danbury</u>, 298 F.R.D. 37, 39 (D. Conn. 2014) (quoting <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36 (1984)).

To establish "good cause," the movant must demonstrate that a "clearly defined, specific and serious injury" will manifest absent a protective order.  <u>In re Terrorist Attacks on Sept. 11, 2011</u>, 54 F. Supp. 2d 220, 222 (S.D.N.Y. 2006).  When such a showing is made, a court may balance any countervailing interest in determining whether the requested order is appropriate.  <u>Burgess v. Town of Wallingford</u>, No. 3:11-

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

CV-1129 (CSH), 2012 WL 4344194, at *6 (D. Conn. Sept. 21, 2012).  As demonstrated below, in this case, "good cause" exists for issuance of the requested protective order, as, absent such order, Officer Kaplan will be punished for appropriately exercising his constitutional rights, in direct contravention of the Second Circuit's mandate to strike a fair balance between interests in accommodating plaintiff's need to access relevant evidence in civil cases and a party's legitimate use of constitutional protections.  <u>See United States v. Certain Real Prop. and Premises Known as: 4003-4005 5th Ave., Brooklyn, NY</u>, 55 F.3d 78, 83-84 (2d Cir. 1995).

**B.    ASSERTING AND WITHDRAWING THE FIFTH AMENDMENT IN CIVIL ACTIONS**

It is well-settled that an individual is entitled to invoke the privilege against self-incrimination in a civil action.  <u>Id.</u> at 82.  Accordingly, "a civil litigant may legitimately use the Fifth Amendment to avoid having to answer to inquiries during any phase of the discovery process."  <u>Id.</u> (internal citations omitted).

The Second Circuit has stated that parties should have the opportunity to fully litigate civil matters.  <u>Martindell v. International Telephone and Telegraph Corp.</u>, 594 F.2d 291, 295 (2d Cir. 1979) (holding that the "full disclosure of all evidence that might conceivably be relevant ... represents the cornerstone of our administration of civil justice.").  The United States Supreme Court has also explained that proper use of Fifth Amendment protections should not be made unnecessarily costly.  <u>See</u> <u>Spevack v.</u>

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

**Klein**, 385 U.S. 511, 515 (1967).  In light of these legal precepts, courts in this circuit have been directed to find ways to permit the presentation of as much testimony as possible in a civil action, despite a prior assertion of the Fifth Amendment.  **Certain Real Property**, 55 F.3d at 84.

In certain instances a civil litigant may simply ask to withdraw the privilege and testify.  **Id.**  In such situations, district courts have been instructed to take liberal positions, as any such withdrawal would permit adjudication of the legal issues after consideration of all the facts material to such claims.  **Id.**  Courts have been further urged to permit withdrawal when the opposing party has suffered minimal prejudice.  **Id.** (citing **Securities and Exchange Commission v. Graystone Nash, Inc.**, 25 F.3d 187, 190 (3d Cir. 1994)).

The determination of whether a withdrawal should be permitted is well within the sound discretion of the court.  **See id.**  Accordingly, a court should explore all possible measures to "accommodate both a litigant's valid Fifth Amendment interests and the opposing parties' needs in having the litigation conducted fairly," which necessarily depends on the particular facts of the case at hand.  **Certain Real Property**, 55 F.3d at 85.

The tension between avoiding self-incrimination and the desire to testify openly has been expressly recognized in the context of civil rights actions.  **See, e.g., Evans v. City of Chicago**, 513 F.3d 735 (7th Cir. 2008); **see also Martinez v. City of Fresno**, Nos.

**8**

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

1:06CV00233, 1:06CV01851, 2010 WL 761109 (E.D. Cal. Mar. 3, 2010).  Specifically, the tension is most evident when a municipal officer is named as a party defendant to a civil action, alleging that the officer's purported conduct violated certain of the plaintiff's constitutional rights, and, at substantially the same time, the officer has been identified as the subject of a criminal investigation or subject to criminal prosecution for the same alleged conduct underlying the civil rights matter.  See Evans, 513 F.3d 735; see also Martinez, 2010 WL 761109.  When this situation arises, the officer must choose to either (a) remain silent and be prejudiced in not justifying his conduct, or (b) testify and expose himself to incriminating admissions.

In Evans, the plaintiff instituted an action against the city and various members of its police force, alleging violations of his state and constitutional rights.  Evans, 513 F.3d at 738.  During discovery, certain defendant officers invoked their Fifth Amendment rights, due to investigations into their conduct by a grand jury and special prosecutor. Id. at 738-39.  Prior to trial, the officers moved to withdraw their Fifth Amendment elections.  Id. at 739.  The district court permitted the withdrawal and permitted the officers to testify at trial, and also barred any reference to the officer's prior invocation of their Fifth Amendment privilege.  Id. at 742-43.

In affirming the district court's ruling, the Seventh Circuit found that the invocation by the officers was made in good faith.  Id. at 743.  Specifically, the court found that the officers were not trying to "game the system," but were concerned about

the pending criminal investigations.  Id.  Moreover, the officers' invocation was made on the advice of counsel.  Id.  Based on the foregoing, permitting withdrawal of their privilege elections was proper.

Similarly, in Martinez, the plaintiffs sued the City of Fresno and various municipal officers for alleged violations of their constitutional rights.  2010 WL 761109, at *1.  One of the defendant officers, who was criminally indicted for his alleged conduct that gave rise to the civil action, invoked his privilege against compulsory self-incrimination during discovery.  Id.  Following his acquittal in the criminal case, the defendant officer sought to withdraw the election of his Fifth Amendment rights.  Id. at *2.

In allowing withdrawal, the court found that the officer's prior invocation was made in good faith and was necessary based on the pending criminal charges against him.  Id.  The court also found that there was little prejudice to the plaintiffs because the officer had previously testified about his actions during the subject incident in an internal affairs investigation and in various police department records.  Id. at *4.  The court also noted that it would reopen discovery for the limited purposes of deposing the defendant officer and compelling him to answer certain interrogatories, which would cure any prejudice to the plaintiffs.  Id.

The material facts of Evans and Martinez are virtually indistinguishable from those of this case, and, as such, the reasoning and holdings of Evans and Martinez should apply with equal force.

Karsten & Tallberg, LLC • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

1.      **Officer Kaplan's Assertion Of The Fifth Amendment**

On the same day as the incident at issue, the CSP began its investigation in the death of Maldonado.  <u>See</u> Ex. A, at 1 ("The State Police responded to the East Hartford Police Department on April 13, 2014, and assumed the investigation.").   Accordingly, Kaplan was under the threat of criminal prosecution almost immediately.  While that threat loomed over his head, on February 2, 2016, plaintiff commenced this action [<u>see</u> Doc. 1].

During discovery, plaintiff issued the Discovery Requests to Kaplan concerning, among other things, his actions as it pertained to the Tasering of Maldonado.  Ex. B, at 4, 6.  Because that exact conduct was the basis for potential criminal prosecution, Kaplan, on the advice of counsel, in good faith and necessarily invoked his Fifth Amendment privilege to certain of those Discovery Requests.  <u>Id.</u>

There is record proof that Officer Kaplan's election of the privilege was not used to game the system, abuse the discovery process or manipulate the administration of the action in any way.  Rather, he was sincerely concerned with the prospect of criminal prosecution, which this Court has specifically recognized.  <u>Ramos</u>, 2016 WL 7340282, at *3 ("The Court recognizes that the Division of Criminal Justice investigation into Mr. Maldonado's death ... remains pending.").  Though the Court has previously concluded that Officer Kaplan was required to provide with plaintiff any information that Kaplan had "voluntarily disclosed to the law enforcement agency investigating Mr.

Maldonado's death[,]" i.e., the CSP, there was no finding that Kaplan had "voluntarily" provided anything to that entity.  Instead, the Town had provided the CSP with East Hartford incident reports authored by Kaplan, as well as other personnel involved in the incident, and, thus, Kaplan provided to plaintiff only the information set forth in those reports.  Compare id., at *4 ("The parties briefing is insufficiently detailed to assist the Court in determining whether Officer Kaplan may assert the privilege as to information beyond what has already been provided to law enforcement officials."), with Ex. B, at 4, 6.

In sum, the record establishes that Kaplan, in good faith, elected his Fifth Amendment privileges while under the threat of criminal prosecution, and there is no evidence suggesting that this invocation was made with an intent or motive on the part of the Officer Kaplan.  Give this reality, the Court should permit withdrawal of Kaplan's prior invocation with regard to his interrogatories.[2]

2.      Any Alleged Prejudice To Plaintiff Is Decidedly Minimal

Any prejudice to plaintiff is minimal or non-existent.  Although the assertion of a civil litigant's Fifth Amendment privilege likely disadvantages an opposing party to some extent, the specific circumstances of the case determine the degree of any such

---

[2] It is noteworthy that Officer Kaplan has on this date issued revised amended responses, specifically withdrawing any objection concerning the Fifth Amendment. Kaplan Revised Amended Discovery Responses, attached hereto as Ex. C.

Karsten & Tallberg, LLC • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

disadvantage.  See Certain Real Property, 55 F.3d at 82.  In this matter, Kaplan's deposition testimony fully eviscerates any prejudice claimed by plaintiff.

While Officer Kaplan asserted his right against self-incrimination as to some of the Discovery Requests, plaintiff was not prejudiced, especially considering that responsive information was provided.  More importantly, Officer Kaplan was deposed by plaintiff's counsel on a broad spectrum of matters, and, therefore, any nominal prejudice from Kaplan's use of the Fifth Amendment as to written discovery was altogether erased.

Plaintiff cannot credibly argue that the proposed withdrawal is at the "eleventh hour," even if requested at the close of fact discovery.  This is because Kaplan provided responsive information to the Discovery Requests; he was deposed at length in the case; dispositive motions have not yet been filed; and trial is not until May 2019 [Doc. 83] (and that is if no dispositive motions are filed – which one will be).  Thus, the proposed withdrawal is being made seasonably in light of the relevant circumstances.

Simply put, Officer Kaplan made a good faith and necessary election of his Fifth Amendment privilege, as he faced the real prospect of criminal prosecution for his alleged conduct during the subject incident.  Additionally, absent from his invocation is any indication of an intent to abuse the discovery process or otherwise game the system.  Finally, any initial prejudice to plaintiff was minimal and subsequently cured by Kaplan's unqualified deposition testimony.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

**C.     THE PROTECTIVE ORDER IS WARRANTED TO PROTECT OFFICER KAPLAN'S RIGHT AGAINST COMPULSORY SELF-INCRIMINATION UNDER THE FIFTH AMENDMENT**

The requested protective order is warranted and is necessary to protect Officer Kaplan's Fifth Amendment privileges.  As previously noted, the Second Circuit has strongly urged courts to make every effort to accommodate litigants whose Fifth Amendment rights against self-incrimination are implicated in civil proceedings. Indeed, the court has explained,

> because *all* parties-those who invoke the Fifth Amendment and those who oppose them-should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation ...

Certain Real Property, 55 F.3d. at 83-84 (internal citation omitted).  Thus, "the court should explore all possible measures in order to select that means which strikes a fair balance ... and ... accommodates both parties."  Id. at 84 (internal quotation marks omitted).

The Court has discretion to fashion the particular accommodation necessary in light of the factual circumstances with which it is faced.  See Certain Real Property, 55 F.3d at 85.  The issuance of a protective order restricting the use of a party's deposition testimony can accommodate the parties' competing interests.  See id. at 83 n.4, 84 n.6.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

In fact, the Second Circuit has used protective orders to prevent the government from using incriminating testimony in subsequent proceedings.  See, e.g., Minepco S.A. v. Conticommodity Servs., Inc., 832 F.2d 739, 742-43 (2d Cir. 1987) (denying CFTC's motion to modify protective order); Palmieri v. State of New York, 779 F.2d 861, 866 (2d. Cir. 1985) (upholding protective order that was specifically intended to preclude Attorney General from learning details of case); Martindell v. International Tel. and Tel. Corp., 594 F.2d 291 (2d Cir. 1979) (recognizing that government's "awesome" investigatory powers "render unnecessary its exploitation of the fruits of private litigation").

At the genesis of such protective orders is Martindell.  In Martindell, a shareholders' derivative suit was instituted, during the pendency of which the parties took pretrial depositions.  594 F.2d at 239.  In connection with the depositions, the district court issued a protective order allowing only the parties to the case to have access to deposition transcripts of certain defendants and witnesses, but also limiting the use of such transcripts to the preparation for and conduct of that pending litigation. Id.  When the United States, which was investigating certain of the Martindell deponents for various crimes, sought access to the deposition transcripts, the district court refused.  Id.

In affirming the district court's denial, the Second Circuit balanced the interests at stake: upholding a protective order to ascertain essential testimony in civil matters

against "the public interest in obtaining all relevant evidence required for law enforcement purposes." Id. at 296.  Through its balancing, the court held that, absent a showing of improvidence in the issuance of a protective order, "a witness should be entitled to rely upon the enforceability of a protective order against any third party, including the Government."  Id.

Since Martindell, courts have used protective orders to further the public policy of permitting as much testimony as possible in the adjudication of civil actions.  In Chase Manhattan Bank, N.A. v. Harris, No. 5:92-CV-188 (WWE), 1998 WL 64763 (D. Conn. Fed. 25, 1998), after Chase renewed its claim for summary judgment, the defendant opposed the motion, without admissible evidence, and, in the alternative, moved the court for a continuance and a protective order, allowing only the parties to the lawsuit access to his deposition testimony.  1998 WL 164763, at *1.  The defendant feared that testifying would compromise his Fifth Amendment rights, given that his writ of habeas corpus was pending.  Id. at *4.

In granting the requested protective order, the district court found that, without such protection, the "defendant would be caught between the Scilla [sic] of not defending his interests in the civil action and the Charybdis of waiving his Fifth Amendment rights."  Id. at *5.  The court went on to conclude that a protective order limiting access and use of the deposition transcripts to the pending civil matter struck a

fair balance between the need for discovery and the defendant's constitutionally-protected interests.  Id.

Similarly and more recently, in United States v. Approximately 1,700 Carats of Rough Diamonds, No. CV 2005-5816 (ARR)(MDG), 2007 WL 2071863 (E.D.N.Y. July 17, 2007), the government commenced a forfeiture action against diamonds seized at John F. Kennedy airport that were allegedly being imported from Brazil without the proper documentation.  2007 WL 2071863, at *1.  Mark Kalisch, the individual from whom the defendant diamonds were seized, sought a protective order restricting the use of his deposition testimony to the forfeiture action to prevent the government from using such testimony in any future proceeding brought against him.  Id.

In granting Kalisch's motion for a protective order, the court found that the defendant had reasonable fears of prosecution should he testify.  Id. at *2.  The court also determined that the protective order served to facilitate the disclosure of relevant evidence while still respecting Kalisch's Fifth Amendment privilege.  Id.  The court also specifically noted that parties to other civil matters in which Kalisch was a party defendant would not be prejudiced by the protective order because they could still use the deposition testimony, provided it was filed under seal, as mandated by the protective order.  Id. at *3.

The circumstances of this matter make it entirely clear that there is "good cause" to grant the requested protective order.  Although admittedly less likely, Officer Kaplan

still has reasonable fears of prosecution should he testify.  The statute of limitations on a felony in Connecticut is five (5) years; Conn. Gen. Stat. § 54-193(b); and the limitations period on a federal civil rights crime under 14 U.S.C. § 242 is also five (5) years.  18 U.S.C. § 3282; see <u>United States v. Cote</u>, 544 F.3d 88, 92 (2d Cir. 2008).  As such, the threat of prosecution exists until April 13, 2019.

A protective order under Rule 26(c) will confirm the sanctity of Kaplan's use of the Fifth Amendment.  That is, Officer Kaplan invoked his constitutionally-ensured protections in good faith, and subsequently determined that Hardy's report sufficiently dissipated the threat of criminal prosecution to such an extent that he presented sworn deposition testimony in this case.  Without the requested protective order, Kaplan's deposition testimony could be used to prosecute him.

What is more, even if by trial the limitations period on any potential crime will have lapsed, a protective order is still necessary to ensure Kaplan is not punished for the proper use of his constitutional protections.  In particular, allowing plaintiff's counsel to reference Officer Kaplan's invocation of his right against self-incrimination will unduly prejudice Kaplan and will serve to dissuade similarly situated police officers in future matters from participating in the civil discovery process, which totally frustrates the core function of the Federal Rules of Civil Procedure – "to secure the just, speedy and inexpensive determination" of civil disputes, Fed. R. Civ. P. 1, "by encouraging full disclosure of all evidence that might conceivably be relevant ..."

<u>Martindell</u>, 594 F.2d at 295.  Accordingly, the Court should use its broad discretion in fashioning the particular protections necessary here in light of the factual circumstances to avoid the significant harm to Kaplan absent an order of protection. <u>See</u> <u>Certain Real Property</u>, 55 F.3d at 85.  And one such vital protection is not allowing plaintiff's counsel to mention Officer Kaplan's Fifth Amendment election to the jury. <u>See</u> <u>Huaman v. Sirois</u>, no. 3:13CV484 (DJS), 2015 WL 1806660, at *5-6 (D. Conn. Apr. 21, 2015) (finding that, if plaintiff's counsel allowed to reference before a jury an officer's prior invocation of his Fifth Amendment privileges after those have been withdrawn, "the playing field would no longer be level but would tilt in favor of the plaintiff.").

IV.    <u>CONCLUSION</u>

For the foregoing reasons, defendant Officer Jason Kaplan respectfully requests that the Court permit him to withdraw his prior invocation of the Fifth Amendment and to enter a protective order: (i) barring the dissemination of his deposition testimony and transcript concerning certain specified matters implicating his Fifth Amendment rights to third parties; (ii) barring plaintiff's counsel from commenting on such deposition testimony concerning those particularly identified matters, outside the context of a judicial proceeding in this action; (iii) precluding plaintiff's counsel from mentioning or commenting on during trial in the presence of the jury Officer Kaplan's invocation of the Fifth Amendment; and (iv) restricting use of Kaplan's deposition testimony and

transcript by the parties to the prosecution or defense of this civil action alone and submission of any such testimony under seal.[3]

**DEFENDANT, JASON KAPLAN**

BY/ss/James N. Tallberg
    James N. Tallberg
    Federal Bar No.: ct17849
    Dennis M. Durao
    Federal Bar No.: ct29271
    Karsten & Tallberg, LLC
    500 Enterprise Drive, Suite 4B
    Rocky Hill, CT 06067
    JTallberg@kt-lawfirm.com

## CERTIFICATION

    I hereby certify that on March 14, 2018 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/ss/James N. Tallberg
James N. Tallberg

---

[3] Any testimony that has already been filed with the Court should be subsequently sealed.