## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILSON RAMOS, As Administrator of the | : | CIV. NO. 3:16cv166(VLB) |
| Estate of Jose A. Maldonado and | : | |
| individually, | : | |
|     Plaintiffs, | : | |
| vs. | : | |
| | : | |
| TOWN OF EAST HARTFORD, OFFICER | : | |
| JASON KAPLAN, SERGEANT JAMES LIS, | : | |
| OFFICER JASON COHEN, and CHIEF | : | |
| SCOTT SANSOM OF THE EAST HARTFORD | : | |
| POLICE DEPARTMENT, | : | OCTOBER 16, 2018 |
|     Defendants. | | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT JASON KAPLAN'S MOTION FOR SUMMARY JUDGMENT

## I.    PRELIMINARY STATEMENT

Plaintiff Wilson Ramos (hereinafter "Ramos" or "plaintiff"), individually and as

the Administrator of Jose Maldonado's Estate (the "Estate") (collectively, "plaintiffs"),

brought this action after Maldonado died in police custody on April 13, 2014 following

his arrest.  In this civil rights action, plaintiffs assert claims against Officer Kaplan for

false arrest, excessive force and deliberate indifference to medical needs pursuant to 42

U.S.C. § 1983 (First Count); conspiracy under § 1985 (Third Count); violations of Article

First, §§ 7, 8 and 9 of the Connecticut constitution (Fourth Count); and negligence (Fifth

Count).  The Estate brings causes of action for wrongful death pursuant to General

Statutes § 52-555 (Sixth Count) and recklessness (Seventh Count).  In addition, Ramos,

individually, presents state common law claims against Kaplan for bystander emotional

distress (Eighth Count) and false arrest/imprisonment (Ninth Count).  On the undisputed record, Officer Kaplan is entitled to summary judgment on all of the claims.

In particular, the Estate's federal force claim fails for two principle reasons.  First, Kaplan's use of force (Taser deployment) was reasonable under the circumstances with which Kaplan was confronted.  Second, Officer Kaplan is entitled to qualified immunity because either his conduct was objectively reasonable or he did not violate any clearly established right of which he should have been reasonably aware.

As for the other § 1983 claims, Officer Kaplan was not personally involved in the arrest of plaintiff or Maldonado, and, at a bare minimum, those arrests were supported by arguable probable cause.  The Estate's deliberate indifference to medical needs claim cannot withstand this Motion because, following the Taser deployment, officers consistently observed Maldonado, who was breathing, and, as soon as there was any indication that medical attention was needed, the Town's first responders were promptly summoned.  Furthermore, Kaplan, all of the other officers and Ramos reasonably believed that Maldonado was passed out due to intoxication, knowledge of which does not logically lead to a finding that Kaplan knew Maldonado faced a substantial risk of harm by heart attack.

Plaintiffs' causes of action premised on Article First, §§ 7 and 9 of the state constitution are susceptible to dismissal for the same reason as the federal claims, namely, the challenged conduct was reasonable; and Connecticut law does not recognize a private right of action under § 8.  The Estate's wrongful death claim

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

pursuant to General Statutes § 52-555 completely subsumes the negligence claim for ante-mortem damages.  The wrongful death claim is defeated by, among other things, governmental immunity to which no exception applies.   Finally, Ramos cannot sustain his bystander emotional distress claim because he has not sustained sufficiently severe and debilitating harm.

## II.   THE UNDISPUTED FACTS

On April 13, 2014, at approximately 1:30 a.m., East Hartford police were dispatched to 130 Nutmeg Lane in East Hartford on the report of a disturbance.  56(a)(1) Statement ¶ 1.[1]  When Officer Kaplan first arrived on scene, the decedent, Jose Maldonado, and Ramos had already been arrested and were handcuffed.  Id. ¶ 2.  Officer Kaplan did not participate in taking Ramos to the ground or handcuffing him.  Id. ¶ 3.

At the scene, Kaplan was requested to transport Maldonado to East Hartford Police Department ("EHPD") headquarters.  Id. ¶ 4.  While preparing Maldonado for transport, he was noncompliant, refusing to lean against the cruiser and spread his legs for a pat down search, and he resisted being seated in the police cruiser.  Id. ¶ 6.  From this interaction with Maldonado, Kaplan had an understanding that Maldonado was intoxicated.  Id. ¶ 5.

On arrival at headquarters, Officer Kaplan drove his cruiser into the sally port and, for his safety, waited for Officer Cohen to arrive before attempting to escort

---

1 The assertions set forth in Kaplan's Local Rule 56(a)(1) Statement are followed by citations to admissible evidence that is being submitted herewith as Exhibits A-L.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Maldonado into the processing area due to his previous noncompliance.  Id. ¶ 7.  This was an eminently prudent choice, as Maldonado continued his vehemently defiant behavior by spitting at Kaplan while in his cruiser.  Id. ¶ 8.

Following Officer Cohen's arrival at headquarters, Officers Cohen and Kaplan removed Maldonado from Kaplan's cruiser and escorted Maldonado into the booking room without incident.  Id. ¶ 9.  Cohen and Kaplan proceeded to bring Maldonado to the decontamination area, where Maldonado could wash any pepper spray remnants from his face.  Id. ¶ 10.  Rather than avail himself of this alleviative option, Maldonado pulled away from the officers and verbalized his refusal to wash his face.  Id. ¶ 11.  In accordance with his expressed desire, Maldonado was then placed into the holding cell, and his handcuffs were removed.  Id. ¶ 12.  Within moments of being placed in the cell, Maldonado removed his shirt and wiped his face with it.  Id. ¶ 13.

Officers Kaplan and Cohen proceeded to retrieve Ramos from Cohen's cruiser in the sally port.  See id. ¶ 14.  This was Ramos' first interaction with Officer Kaplan.  Id. ¶ 15.  The officers then escorted him into the booking room and brought him to the decontamination area where he took advantage of the provided relief and washed his face.  Id.  After Ramos washed his face, Officer Kaplan escorted him back into the booking room.  Id. ¶ 16.  There, Kaplan wiped Ramos' nose or helped him blow it.  Id.  Plaintiff was subsequently asked whether he was comfortable being placed in the same cell as Maldonado; plaintiff replied in the affirmative.  Id. ¶ 17.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

As officers prepared to place plaintiff in the holding cell, Maldonado began to remove his pants.  Id. ¶ 18.  Before opening the cell door, Maldonado was instructed to step back.  Id. ¶ 19.  Shortly after Officer Cohen began to open the holding cell door, Maldonado rushed toward the door; grabbed it; and forced it open.  Id. ¶ 20.  Once open, Maldonado exited the holding cell and aggressively charged at officers.  Id. ¶ 21

Eventually, officers were able to corral Maldonado back into the cell.  Id. ¶ 22.  However, this did not end Maldonado's physically combative conduct.  See id.  Instead, almost immediately after being forced back into the holding cell, Maldonado threw a punch at Sergeant Lis.  Id.  Based on Maldonado's physical resistance, Officer Kaplan determined that the Taser most safely accomplished neutralizing the threat of physical harm posed by Maldonado.  Id. ¶ 23.  As such, Officer Kaplan issued a warning, yelling "Taser," and deployed the Taser, shooting its two probes at the anterior of Maldonado's upper body.  Id. ¶ 24.

From Officer Kaplan's perspective, the Taser appeared ineffective.  Id. ¶ 25.  This is because, rather than result in complete incapacitation, Maldonado merely made fists with his hands and flexed, bending over and bringing his hands near the Taser darts.  Id.  According to information downloaded from Officer Kaplan's Taser, the duration of the deployment was twenty seconds; however, Officer Kaplan does not know if Maldonado received electrical current for that entire time, if any.  Id. ¶ 27.  Moreover, the other officers present heard loud popping or snapping noises emanating from the Taser that indicates improper functioning.  Id.  Due to the Taser's apparent ineffectiveness,

**Karsten & Tallberg, LLC •** ATTORNEYS AT LAW

500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Kaplan continued to depress the trigger to obtain compliance, and, to that end, Sergeant Lis struck Maldonado and pushed him to the ground.  Id. ¶¶ 26, 28.  Ultimately, Maldonado was handcuffed and laid on his side on the holding cell floor.  Id. ¶ 29.

Thereafter, Lis, Cohen, Kaplan and plaintiff exited the holding cell.  Id. ¶ 30. Throughout the next three to four minutes, Lis, Cohen, Kaplan and/or non-party Officer Matthew Parlapiano remained in the booking room, in close proximity to the holding cell, and specifically observed Maldonado from outside the cell.  Id. ¶ 31.  Similarly, Ramos remained in close proximity to the holding cell, even sitting directly outside the cell door, and had the opportunity to likewise observe Maldonado.  Id. ¶ 32.  In the time between the Taser deployment and officers re-entering the holding cell to check on Maldonado, Maldonado took at least twenty-five breaths.  Id. ¶ 33.  During this period, Kaplan, Lis, Cohen and Ramos all reasonably believed that Maldonado was passed out due to intoxication.  Id. ¶¶ 34-35.

About 30 seconds after Maldonado's last visible breath, officers entered the holding cell and unsuccessfully attempted to awake Maldonado.  Id. ¶ 36.  Accordingly, Officer Parlapiano contacted dispatch at 2:11 a.m. and requested "paramedics … ASAP."  Id.  For purposes of medical calls, members of the East Hartford Fire Department are first responders.  Id. ¶ 37.  In response, Fire Dispatch radioed that police had an intoxicated male in the booking room and requested Engine 3 and Ambulance Service of Manchester for a cold response.  Id. ¶ 38.  Thereafter, at 2:16 a.m., Parlapiano contacted dispatch, wisely updating Maldonado's status to unconscious and re-

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

requesting paramedics.  <u>Id.</u> ¶ 39.  Dispatch accordingly modified the call for the ambulance to a "hot" response, and requested that Engine 2 now also accompany Engine 3.  <u>Id.</u> ¶ 40.

At 2:16 a.m., first responders entered the booking room and began to attend to Maldonado.  <u>Id.</u> ¶ 41.  Three minutes later, at 2:19 a.m., it was communicated to dispatch that Maldonado was suffering from cardiac arrest.  <u>Id.</u> ¶ 42.  Maldonado was subsequently transported to Hartford Hospital and pronounced dead at 2:54 a.m.  <u>Id.</u> ¶ 43.

### III.    <u>PLAINITIFF'S COMPLAINT/PROCEDURAL HISTORY</u>

Plaintiff commenced this action by filing a complaint in the District Court for the District of Connecticut on or about February 2, 2016 [Doc. 1].  Thereafter, on December 9, 2016, plaintiff filed the operative amended complaint [Doc. 36].[2]  In the operative complaint, plaintiffs assert claims for, among other things, excessive force, false arrest, deliberate indifference to medical needs, wrongful death, negligence and bystander emotional distress.  Officer Kaplan filed his answer [Doc. 14], denying all material allegations of liability and asserting certain affirmative defenses, including qualified immunity and governmental immunity.  As more particularly set forth below, Officer Kaplan now moves for summary judgment on all of plaintiffs' claims against him.

---

[2] It should be noted that presently pending are plaintiffs' motion for leave to amend the complaint [Doc. 105] and defendants' objections thereto [Docs. 107, 108].

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

IV.    **ARGUMENT**

   A.    **SUMMARY JUDGMENT STANDARD**

   A motion for summary judgment should be granted if the court determines that there is no genuine issue of material fact to be tried, and the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c); <u>see</u> <u>generally</u> <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir. 1995).  The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>Cronin</u>, 46 F.3d at 202.  Defendants here have done so by way of their Local Rule 56(a) Statement and appended exhibits.

   "[M]ere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion."  <u>Quarles v. General Motors Corp.</u>, 758 F.2d 839, 840 (2d Cir. 1985).  Instead, the non-moving party "must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful," and "may not rely on conclusory allegations or unsubstantiated speculation." <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir. 2005); <u>see</u> <u>Johnson v. Carpenter Technology Corp.</u>, 723 F. Supp. 180, 182 (D. Conn. 1989).  Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

At this stage the facts must be viewed in the light most favorable to the plaintiff only if there is a "genuine" dispute as to those facts.  <u>Scott v. Harris</u>, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007).  When a party's story is blatantly contradicted by the record, it should not be adopted for purposes of ruling on a motion for summary judgment.  <u>Id.</u>  Here, no fact material to plaintiffs' claims is in genuine dispute, and the undisputed facts dispose of those causes of action as a matter of law.

**B.    PLAINTIFFS CANNOT PREVAIL ON THEIR FALSE ARRESTS CLAIMS**

Plaintiffs have indicated their willingness to withdraw their § 1983 (First Count) and Ramos' common law false arrest / false imprisonment (Ninth Count)[3] claims against Kaplan, <u>see</u> Doc. 120 at 8; however, out of an abundance caution, Officer Kaplan will address each of these claims supposedly directed at him.

In the Second Circuit, personal involvement of the defendant in an alleged constitutional deprivation is generally a prerequisite to an award of damages under § 1983.  <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 886 (2d Cir. 1991); <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11 (2d Cir. 1988); <u>Jones v. City of Hartford</u>, 285 F. Supp. 2d 174, 182 (D. Conn. 2003).  In this case, the undisputed facts establish that Officer Kaplan did not personally participate in the arrest of plaintiff or Maldonado.

A plaintiff seeking to recover for false arrest pursuant to 42 U.S.C. § 1983 must establish that "(1) the defendant intentionally arrested him or had him arrested, (2) the

---

3 This willingness should equally apply to the § 1983 false arrest claim that Ramos purports to present. See Compl., First Count ¶ 61(a).

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

plaintiff was aware of the arrest, (3) there was no consent to the arrest, and (4) the arrest was not supported by probable cause."  <u>Weinstock v. Wilk</u>, 296 F. Supp. 2d 241, 246 (D. Conn. 2003).  To prove Kaplan's personal involvement in the supposedly false arrests, plaintiffs must show either direct participation, "that is, personal participation by one who has knowledge of the facts that rendered the conduct illegal, or indirect participation such as ordering or helping others to do the unlawful acts."  <u>Johnson v. Fallon</u>, No. 3:07CV605 (SRU), 2009 WL 513733, at *3 (D. Conn. Feb. 10, 2009) (internal quotations omitted) (citing <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 155 (2d Cir. 2001)).

Kaplan has unambiguously testified that, on his arrival at 31 Nutmeg Lane, Ramos and Maldonado had already been arrested and were handcuffed.  Undisputed Facts ¶ 2.  There is a total absence of evidence that Kaplan was involved in the decision to arrest Maldonado or Ramos, or their actual arrests; and plaintiff has freely admitted that Kaplan was not involved in bringing him to the ground or otherwise effecting his arrest.  <u>Id.</u> ¶ 3.  Though Kaplan assisted in the booking process, this has been repeatedly held to be an insufficient basis on which § 1983 liability can attach.  <u>See</u>, <u>e.g.</u>, <u>McGowan v. Town of Evans</u>, No. 15-CV-672-RJA-MJR, 2017 WL 563389, at *11 (W.D.N.Y. Sept. 13, 2017) (booking officer with "no involvement in the decision to arrest plaintiff or the arrest itself" was not personally involved in the allegedly false arrest); <u>Paige v. Moskalik</u>, No. 07 Civ 7381(SCR)(GAY), 2010 WL 6466052, at *4 (S.D.N.Y. Apr. 28, 2010); <u>el v. Doe</u>, 15 Civ. 6581 (BMC) (RLM), 2016 WL 6205795, at *2 (E.D.N.Y. Oct. 24, 2016)

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

(officer that was neither present for nor involved in the actual arrest, but entered it into the online booking report, found to lack the requisite personal involvement for § 1983 purposes).   That Kaplan played absolutely no role in either arrest, it is similarly impossible to conclude that he "unlawful[ly] restrain[ed] … the physical liberty of" Maldonado or Ramos.  <u>Russo v. City of Bridgeport</u>, 479 F.3d 196, 204 (2d Cir. 2007) (quotation marks omitted).  Therefore, Kaplan is entitled to judgment in his favor on plaintiffs' § 1983 and Ramos' common law claims for false arrest/imprisonment.

C.   **KAPLAN DID NOT USE ANY FORCE ON RAMOS, AND THE CHALLENGED TASER DEPLOYMENT WAS REASONABLE UNDER THE CIRCUMSTANCES**

Plaintiffs' claims for excessive force in violation of the Fourth Amendment, as enforced through § 1983 fail, because Kaplan did not use any force against Ramos, and the at-issue Taser deployment was constitutionally permissible under the circumstances.  Therefore, plaintiffs' excessive force claims fail as a matter of law.

It is well established that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat to effect it." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).  Whether the use of force in a particular seizure is "reasonable" is governed under the Fourth Amendment standard of reasonableness. <u>Saucier v. Katz</u>, 533 U.S. 194, 200, 204 (2001); <u>Graham</u>, 490 U.S. at 396.  The determination of whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a "careful balancing of the nature and quality of the individual's Fourth Amendment interest against the countervailing governmental interest at stake." <u>Graham</u>, 490 U.S. at 396.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW

500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

To evaluate the governmental interests at stake, a court must consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect pose[d] an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." See Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham, 490 U.S. at 396).  These factors must be evaluated from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.  Because of this, courts "allow[] for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  Id. at 396-97.

Plaintiffs are appropriately willing to withdraw Ramos' excessive force claim as to Kaplan, Doc. 120 at 8, presumably because there is absolutely no factual basis to assert it:

> Q.     As far as in the police department holding cell, Officer Kaplan did not strike you, punch you, use any force against you; correct?
>
> A.     Correct.

Ramos Dep. at 105; Undisputed Facts ¶ 44.  How there could have ever been a good faith belief to bring this claim is logic defying, but Ramos' unambiguous sworn testimony confirms that, as to him, Officer Kaplan engaged in no unreasonable conduct. Ibid.

A Taser is a non-lethal electronic defense weapon under Connecticut law.  See Conn. Gen. Stat. § 53a-3(20).  A Taser, model X26, which was employed in this incident,

when deployed, "propels a pair of barbed probes which are connected to the Taser by thin insulated wires.  Upon contact with the subject, the Taser X26 delivers a high voltage charge which overrides the subject's central nervous system and causes uncontrollable muscle contractions, thus temporarily incapacitating the subject.  Tasing generally does not result in permanent injury." <u>Macleod v. Town of Brattleboro</u>, No. 5:10-cv-286, 2012 WL 1928656, at *3 (D. Vt. May 25, 2012), <u>aff'd</u> 548 Fed. Appx. 6, 7-8 (2d Cir. 2013) (summary order).  The application of electrical current has been described as "moderate, non-lethal force." <u>Crowell v. Kirkpatrick</u>, 667 F. Supp. 2d 391, 409 (D. Vt. 2009) (citing <u>Buckley v. Haddock</u>, 292 Fed. Appx. 791, 795 (11th Cir. 2008)), <u>aff'd</u> 400 Fed. Appx. 592 (2d Cir. 2010) (summary order).

In order to justify use of a Taser, the governmental interest in the use of force must outweigh a suspect's interest in being free from the use of that degree of force. <u>See</u> <u>Graham</u>, 490 U.S. at 396.  In examining those interests, courts consider, <u>inter</u> <u>alia</u>, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u>

In this case, a police response was required because Maldonado in a fit of rage punched the driver's-side front window of another vehicle, in which car were, among others, three young children.  Co-defs.' 56(a)(1) Statement ¶ 4.  In his first interaction with police, Maldonado approached Sergeant Lis with his fist clenched and muttering "fuck you, motherfucker." <u>Id.</u> ¶ 12.  Officers were required to go hands on in an attempt

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

to control Maldonado, who continued to physically resist the police after he was brought to the ground.  Id. ¶¶ 12-15; see Bigio Dep., attached hereto as Ex. G, at 37-38.[4]

Even after his arrest, Maldonado's physical defiance persisted.  He refused to lean against the cruiser and spread his legs for a pat down search, and he resisted being seated in the police cruiser.  Undisputed Facts ¶ 6.  While in the cruiser, Maldonado tried to spit on Officer Kaplan.  Id. ¶ 8.

No matter what inapt descriptions plaintiffs use to characterize Maldonado's physically combative behavior in the holding cell, see Doc. 120 at 3, the video of the incident provides objective evidence that, for at least a second time, officers were confronted with a persistently and increasingly combative and intoxicated individual that had already and continued to threaten the safety of the officers and had failed since the inception of their interaction to exhibit a mote of compliance with any lawful police directive.  Under this continued threat – and after exhausting other means of neutralization – the force employed was reasonable.

Specifically, as Officer Cohen was in the process of opening the cell door, Maldonado grabbed the door with both hands and powerfully slid it open.  Undisputed Facts ¶ 20.

---

[4] Plaintiff cannot refute any of Maldonado's criminally violent conduct on scene, as he has explicitly admitted that, after being pepper sprayed, the only interaction he observed was police placing Maldonado into a cruiser.  Ramos Dep. at 74-75, 148.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

 

**Booking Room Video at 2:04:38; Holding Cell Video at 2:04:38.  This is despite already being instructed to step away from the cell door.  Undisputed Facts ¶ 19.  Maldonado then upped the danger quotient, rushing out of the cell and at the officers aggressively. Id. ¶ 21.**



**Booking Room Video at 2:04:39.  Plaintiffs' claim that Maldonado "stumbled over to the door and his body entered the doorway" ignores all of Maldonado's highly violent conduct up to that point.  Doc. 120 at 3.  And even though officers were able to force**

Maldonado back into the cell, he predictably continued to physically resist, this time maniacally throwing a haymaker at Sergeant Lis.  Undisputed Facts ¶ 22.



Holding Cell Video at 2:04:43.

From Officer Kaplan's perspective, he and his fellow officers faced an individual who had been wholly noncompliant from the commencement of law enforcement involvement, who had overpowered an officer to force open a holding cell door, who had exited the cell and aggressively charged at officers, and who had just wildly thrown a punch at an officer.  Undisputed Facts ¶¶ 20-22.  Officers had attempted to control Maldonado with verbal commands; id. ¶ 19; Bigio Dep. at 37; and with limited physical force; Lis Dep. at 117-18; both of which proved totally unsuccessful, and there was no basis to believe that Maldonado would comply.

Accordingly, in order to achieve officer safety and counterbalance the clear threat Maldonado presented, Officer Kaplan yelled "Taser" – causing Cohen and Lis to back

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

away – and deployed his Taser, propelling the probes into Maldonado's midsection area.  Undisputed Facts ¶ 24.  Based on Kaplan's training and experience, he reasonably believed the Taser would completely incapacitate Maldonado.  See id. ¶ 25. But this is not what happened.

Instead, Maldonado merely flexed, clenched his fists and brought his hands towards the Taser prongs.  Ibid.  The apparent want of "lock up" and incapacitation left Maldonado in a position to advance on officers.  Kaplan Dep. at 167.  Given everything Kaplan had experienced with Maldonado up to this time, it was fully reasonable for him to continue the only potentially effective Taser deployment until Maldonado could be safely approached and handcuffed.  See Plumhoff v. Rickard, 134 S. Ct. 2012, 2022 (2014) (recognizing that defendant officer permitted to account for plaintiff's previous conduct in believing "that Rickard was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road.").

This Court has specifically found that, "[c]ourts considering the use of tasers have found no constitutional violation where the suspect was resisting police officers." Arnold v. Buck, No. 3:11-CV-1343 VLB, 2013 WL 3992361, at *5 (D. Conn. Aug. 2, 2013). There, this Court found that use of a Taser on the plaintiff, who possessed a knife (but was assumed not to be threatening officers with it), was argumentative, failed to comply with orders and attempted to flee, was objectively reasonable.  Id. at *6.  If those circumstances justified a Taser deployment, then the decidedly more threatening

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

resistance displayed by the highly combative and noncompliant Maldonado certainly renders Kaplan's Taser deployment constitutionally permissible.

In the most analogous of cases, <u>Vences v. Patino</u>, No. 17-CV-075-GKF-JFJ, 2018 WL 3848818 (N.D. Ok. Aug. 13, 2018), the plaintiff – a pretrial detainee – threw his lunch at officers; he behaved aggressively; he refused orders to get on the cell floor; and he punched officers.  2018 WL 3848818, at *4.  The court concluded that when confronted with such active resistance, "any reasonable jury would find that Defendants' response to [the plaintiff's] actions was objectively reasonable under the circumstances." <u>Id.</u>

The long and short of it is, there is credible record evidence that Maldonado was actively resisting officers in the holding cell, and Kaplan's determination that the Taser presented the safest and most efficient way to gain control of Maldonado was reasonable.  Because Second Circuit "precedents suggest that it is *not* excessive force to deploy Tasers … against arrestees who are dangerous or resisting arrest," <u>Penree by Penree v. City of Utica</u>, 694 Fed. Appx. 30, 33 (2d Cir. 2017) (summary order) (emphasis in original) (citing <u>MacLeod v. Town of Brattleboro</u>, 548 Fed. Appx. 6, 7-8 (2d Cir. 2013) (summary order), and <u>Crowell v. Kirkpatrick</u>, 400 Fed. Appx. 592, 595-96 (2d Cir. 2010) (summary order)), Kaplan did not run afoul of the Fourth Amendment, and summary judgment is warranted.

### D.    KAPLAN WAS NOT DELIBERATELY INDIFFERENT TO MALDONADO'S MEDICAL NEEDS

The complaint seemingly includes claims by both plaintiffs for deliberate indifference to the medical needs; however, plaintiffs have properly clarified that

"Ramos has never claimed a deliberate indifference to *his* medical needs, and to the extent the Amended Complaint can be construed to allege such a claim (which was unintended), Ramos will agree to withdraw such a claim or amend the complaint accordingly."  Doc. 120, at 8 (emphasis in original).

As for Maldonado, Kaplan was not deliberately indifferent to his medical needs following the Taser deployment.  Contrary to plaintiffs' assertions, the record video footage shows that all of the officers remained in close proximity to Maldonado; they can be seen specifically observing Maldonado; and there is incontrovertible evidence that Maldonado was breathing for a substantial portion of time.  Moreover, the reasonableness of the officers' belief that Maldonado was simply passed out due to intoxication is supported by the information available to them at the time and Ramos sharing that identical perception.

To prevail on a claim of deliberate indifference, a plaintiff must show: (1) that he had a "serious medical condition"; and (2) that it was met with "deliberate indifference." Gomez v. Cty. of Westchester, 649 Fed. Appx. 93, 95 (2d Cir. 2016) (summary order). The first requirement, that an alleged deprivation is "sufficiently serious," id., is measured in objective terms, and "contemplates a condition of urgency" which "may produce death, degeneration or extreme pain." Wilson v. Siter, 501 U.S. 294, 298 (1991); cf. Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990).  Relevant factors "include whether a reasonable doctor or patient would find [the condition] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

whether it causes chronic and substantial pain." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

The second requirement is subjective: the charged official must act with a sufficiently culpable state of mind. Wilson, 501 U.S. at 300. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious harm will result. Farmer v. Brennan, 511 U.S. 825, 836-37 (1994). The risk of harm must be substantial, and the official's actions must be more than merely negligent. Id. at 835-37.

Here, no reasonable jury could find that Officer Kaplan knew of and disregarded an excessive risk to Maldonado's health or safety. Following the Taser deployment, Maldonado was able to sit himself up against the holding cell wall. Holding Cell Video at 2:04:55. Once Maldonado had been handcuffed, all of the officers and plaintiff remained in extremely close proximity to the holding cell – and by extension Maldonado. Undisputed Facts ¶¶ 31-32. In particular, the booking room video depicts:

| Time on Camera | Event |
|---|---|
| 2:07:12-14 | Sergeant Lis seen watching Maldonado |
| 2:07:26 | Sergeant Lis seen watching Maldonado |
| 2:07:40 | Sergeant Lis and Officer Cohen seen watching Maldonado |
| 2:07:46-52 | Sergeant Lis seen moving closer to holding cell to look at Maldonado |
| 2:07:59 – 2:08:03 | Officer Cohen goes up to cell to look at Maldonado |
| 2:08:11 | Officer Kaplan seen looking at Maldonado |

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

| 2:08:24 | Sergeant Lis seen looking at Maldonado |
| 2:08:34 | Officer Parlapiano seen looking at Maldonado |
| 2:08:51 | Sergeant Lis seen moving closer to cell door to look at Maldonado |
| 2:09:15 | Officer Kaplan and Wilson Ramos seen looking at Maldonado |
| 2:10:11 | Officer Kaplan seen looking at Maldonado |
| 2:10:16-17 | Sergeant Lis and Officer Cohen seen joining Officer Kaplan looking at Maldonado |

By this point, Officer Kaplan had previously developed an understanding that Maldonado was intoxicated, Undisputed Facts ¶ 5, and, critically, from his perspective, as well as those of Lis, Cohen and even plaintiff, Maldonado appeared to be simply passed out due to intoxication.  Id. ¶¶ 34-35.  Not only did Kaplan's previous understanding bolster the reasonableness of this belief, but, in his experience, intoxicated persons that have been in a physical interaction with police oftentimes take time to "cool off" and temporarily end communication with law enforcement.  Kaplan Dep. at 178-79.

Notwithstanding knowledge of intoxication, "[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." Bradway v. Town of Southampton, 826 F. Supp. 2d 458, 471-72 (S.D.N.Y. 2011) (quoting Burnette v. Taylor, 533 F.3d 1325, 1333 (11th Cir. 2008)); see Estate of Lawson ex rel. Fink v. City of Hamilton, No. C–1–07–927, 2009 WL 1444556, at *16 (S.D. Ohio May 21, 2009) ("The Constitution does not require an officer to provide medical assessment and care to

Karsten & Tallberg, LLC • ATTORNEYS AT LAW

500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

every intoxicated person he arrests, regardless of the degree of impairment.").  Even if this were not the case, however, from the officers' reasonable vantage points, Maldonado appeared to be breathing normally.  The holding cell video shows Maldonado take over 25 breaths:

| Time on Camera | Event |
| --- | --- |
| 2:05:49 | Maldonado seen moving from breath taken |
| 2:05:51 | Maldonado seen moving from breath taken |
| 2:05:54 | Maldonado seen moving from breath taken |
| 2:06:08 | Maldonado seen moving from breath taken |
| 2:06:12 | Maldonado seen moving from breath taken |
| 2:06:16 | Maldonado seen moving from breath taken |
| 2:06:26-28 | Maldonado seen moving from breath taken |
| 2:06:31 | Maldonado seen moving from breath taken |
| 2:06:46 | Maldonado seen moving from breath taken |
| 2:06:49 | Maldonado seen moving from breath taken |
| 2:07:06 | Maldonado seen moving from breath taken |
| 2:07:10 | Maldonado seen moving from breath taken |
| 2:07:22 | Maldonado seen moving from breath taken |
| 2:07:25 | Maldonado seen moving from breath taken |
| 2:07:29 | Maldonado seen moving from breath taken |
| 2:07:46 | Maldonado seen moving from breath taken |

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

| | |
|---|---|
| **2:07:50** | **Maldonado seen moving from breath taken** |
| **2:07:53** | **Maldonado seen moving from breath taken** |
| **2:07:57** | **Maldonado seen moving from breath taken** |
| **2:08:03** | **Maldonado seen moving from breath taken** |
| **2:08:08** | **Maldonado seen moving from breath taken** |
| **2:08:13** | **Maldonado seen moving from breath taken** |
| **2:08:37** | **Maldonado seen moving from breath taken** |
| **2:09:03** | **Maldonado seen moving from breath taken** |
| **2:09:15** | **Maldonado seen moving from breath taken** |
| **2:09:26** | **Maldonado seen moving from breath taken** |
| **2:10:05** | **Maldonado seen moving from breath taken** |

**Undisputed Facts ¶ 33.**

**Realizing the significant persuasiveness of this objective evidence, plaintiffs try to unnaturally spin these circumstances, positing that Maldonado was "gasping" or suffering "agonal respirations."  Doc. 120 at 6.  Yet, Kaplan has testified that the concept of "agonal respirations" is foreign to him, Kaplan Dep. at 179, and there is an absence of evidence that Kaplan should have been aware and able to identify and diagnose them at the relevant period.  See Co-defs.' 56(a)(1) Statement ¶ 62.  Indeed, Kaplan is not a first responder.  Undisputed Facts ¶ 37.  As such, plaintiffs' attempt to assess Kaplan's alleged actions or omissions with exacting medical scrutiny is improper.**

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

What is more, within approximately 30 seconds of Maldonado's last visible breath, officers entered the holding cell to care for Maldonado, Booking Room Video at 2:10:36, and approximately 30 seconds thereafter, Officer Parlapiano radioed dispatch for "paramedics … ASAP." Undisputed Facts ¶ 36.  Officer Kaplan also performed a sternum rub on Maldonado to confirm that he was not playing possum.  Kaplan Dep. at 176-77.  From this time on, at least one officer was within the cell with Maldonado, see Booking Room Video at 2:10:36-2:16:40, which enabled Parlapiano to update responding paramedics regarding Maldonado's condition.  See Undisputed Facts ¶ 39. This was in fact vital to Maldonado's medical care, as Fire Dispatch, in its discretion, modified the response from "cold" to "hot." Id. ¶ 40.  First responders for the Town arrived at the booking room at 2:16 a.m., within five minutes of the initial call for assistance.  Id. ¶ 41.

Simply put, there is credible proof that Maldonado did not exhibit any signs of apparent distress, but rather his behavior was consistent with that of an intoxicated individual; however, knowledge of Maldonado's intoxication does not establish that Kaplan subjectively knew or should have known that Maldonado would face an imminent heart attack or death.[5]  See Martinez v. Beggs, 563 F.3d 1082, 1090 (10th Cir. 2009) (affirmed finding that officers possessing knowledge of the decedent's intoxication was insufficient to suspect that he was at risk of a heart attack or death).

---

[5] In fact, first responders had been caring for Maldonado for approximately three minutes before determining that he was experiencing cardiac arrest.  Undisputed Facts ¶¶ 41-42.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

And as soon as there was an apparent need for medical assistance, Town first responders were immediately requested, and Maldonado received care within five minutes, Undisputed Facts ¶¶ 36, 41, which is definitionally prompt.  See Stanley v. Meier, No. 3:09cv1643 (VLB), 2012 WL 2367386, at *4 (D. Conn. June 21, 2012) (summary judgment granted in favor of defendant officers on deliberate indifference claim where plaintiff was treated at the hospital within a half hour of Taser deployment).  Consequently, the Estate's deliberate indifference claim is fatally flawed.

### E.    OFFICER KAPLAN IS ENTITLED TO QUALIFIED IMMUNITY

Should the Court find that plaintiffs' Fourth Amendment rights were violated by Officer Kaplan during the incident, or that a genuine factual dispute precludes judgment in his favor, propositions which are strongly disputed, summary judgment should still enter based on the doctrine of qualified immunity.  Qualified immunity shields a police officer from suits for damages under 42 U.S.C. § 1983, unless his actions violate clearly established rights of which an objectively reasonable official would have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009).

Police officers are entitled to qualified immunity insofar as their conduct does not violate a clearly established right.  Curry v. Syracuse, 316 F.3d 324, 334 (2d Cir. 2004);

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW

500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

**Lennon v. Miller**, 66 F.3d 416, 420 (2d Cir. 1995).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that <u>every</u> 'reasonable official would have understood that what he is doing violates that right.'" **Ashcroft v. al-Kidd**, 563 U.S. 731, 741 (2011) (emphasis added; citation omitted).  As to the force in question, the relevant inquiry "asks whether <u>every reasonable police officer</u> would view the force used by [Kaplan], in the circumstances in which that force was applied, as excessive according to clearly established law." **Brown v. City of New York**, 862 F.3d 182, 192 (2d Cir. 2017) (emphasis added; internal quotation marks omitted).

The Supreme Court has repeatedly cautioned courts below "not to define clearly established law at a high level of generality." <u>al-Kidd</u>, 563 U.S. at 742.  This is because "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." **City and Country of San Francisco, Calif. v. Sheehan**, 135 S. Ct. 1765, 1776 (2015).  Accordingly, the issue is "whether the violative nature of <u>particular</u> conduct is clearly established," and the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." **Mullenix v. Luna**, 136 S. Ct. 305, 308 (2015) (emphasis added; citation omitted).  Indeed, "[s]uch specificity is especially important in the Fourth Amendment context, where the Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

factual situation the officer confronts." <u>Id.</u> (internal quotation marks and citations omitted).

The analysis is further confined to "Supreme Court and Second Circuit precedent as it existed at time of the challenged conduct." <u>McGowan v. United States</u>, 825 F.3d 118, 124 (2d Cir. 2016).  To find a right clearly established, the Court must "identify a case where an officer acting under similar circumstances as [the defendant officers] <u>was held to have violated the Fourth Amendment</u>."  <u>White v. Pauly</u>, 137 S. Ct. 548, 552 (2017) (emphasis added).

In accordance with the foregoing Supreme Court pronouncements, the relevant inquiry in this case is whether a law enforcement officer that discharged his Taser at an individual, who had overpowered an officer to force open a holding cell door, who had left the confines of the cell against police directives and was actively fighting with another officer has been found to have run afoul of the Fourth Amendment.  A review of the relevant case law demonstrates that an objectively reasonable law enforcement official would not have known that the at-issue Taser deployment amounted to a violation of Maldonado's constitutional rights.

At a base level, "general statements of the law are not inherently incapable of giving fair and clear warning" to officers about constitutionally permissible conduct, <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997), but cases such as "<u>Garner</u> and <u>Graham</u> do not by themselves create clearly established law outside an obvious case." <u>White</u>, 137 S. Ct. at 552 (quoting <u>Brosseau v. Haugen</u>, 543 U.S. 194, 199 (2004) (*per curiam*)).

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW

500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Here, a cursory review of the undisputed facts proves that this is not a case where it is obvious that there was a violation of clearly established law under <u>Garner</u> or <u>Graham</u>. Instead, this matter involved a tense, rapidly involving situation where officers were confronted with a physically assaultive arrestee, whose behavior to that point had been entirely unpredictably explosive and that had disregarded and was willfully flouting lawful directives all in an effort to undermine the requisite order and safety of a booking room.

As previously noted, in April 2014, Second Circuit "precedents suggest that it is *not* excessive force to deploy Tasers … against arrestees who are dangerous or resisting arrest." <u>Penree</u>, 694 Fed. Appx. at 33 (emphasis in original) (citing <u>MacLeod</u>, 548 Fed. Appx. at 7-8, and <u>Crowell</u>, 400 Fed. Appx. at 595-96). In <u>MacLeod</u> and <u>Crowell</u>, both predating this incident, the Second Circuit determined that use of a Taser against the plaintiffs – who were neither fleeing from nor actively fighting with police, but were not complying with verbal directives – was reasonable. <u>Macleod</u>, 648 Fed. Appx. at 7-9; <u>Crowell</u>, 400 Fed. Appx. at 594-96. In this matter, it is beyond reasonable dispute that Maldonado was actively fighting with the officers, Undisputed Facts ¶ 21, and he can be clearly seen throwing a punch at Sergeant Lis moments before the Taser is deployed. <u>Id.</u> ¶ 22. Through this prism then, Second Circuit decisional law would not have provided Kaplan with "fair notice" that his Taser deployment was constitutionally prohibited.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Moreover, other means to effectuate Maldonado's compliance were employed, including verbal commands and body strikes, neither of which was successful. Undisputed Facts ¶¶ 19, 26.  Accordingly, these incremental increases of force accorded with the relevant precedential authorities further elucidating the lack of clearly established authority.  See Crowell v. Kirkpatrick, 667 F. Supp. 2d 391, 408 (D. Vt. 2009) (noting that defendant officers acted in accordance with "Use of Force Continuum" when incrementally increasing force used in effecting plaintiffs' arrests), aff'd 400 Fed. Appx. 592.

Pressing further, from Kaplan's vantage point, the Taser was ineffective because it did not completely "lock up" and incapacitate Maldonado.  Undisputed Facts ¶¶ 25-28. As such, Officer Kaplan continued to depress the trigger in an attempt to actually neutralize the threat the unsubdued Maldonado presented.  Id. ¶ 28.  Use of a Taser by police to secure an unrestrained suspect does not offend the constitution.  See Buckley v. Haddock, 292 Fed. Appx. 791 (11th Cir. 2008) ("The district court's suggestion that Plaintiff had been fully secured because he was handcuffed is mistaken: Plaintiff was not bound at the feet (so, he could both run and kick), he was moving around on the ground alongside a busy road, and he would not comply with the deputy's repeated instructions to stand up and to move to the patrol car where Plaintiff could be confined. An objectively reasonable police officer could rightly believe that force was therefore necessary to secure the non-compliant Plaintiff in the patrol car and thereby complete the arrest."); see also Love v. City of Mobile, Civ. No. 10-0166-CG-C, 2011 WL 3843697,

at *9 (S.D. Ala. Aug. 29, 2011) (finding defendants entitled to qualified immunity for Taser deployments, including the third when plaintiff was on the ground but unsecured).

Quite simply, in April 2014, "it [wa]s *not* excessive force to deploy Tasers … against arrestees who are dangerous or resisting arrest." <u>Penree</u>, 694 Fed. Appx. at 33 (emphasis in original).  And given the dearth of case law even remotely resembling the situation presented in this matter, much less "a case where an officer acting under similar circumstances as Officer [Kaplan] was held to have violated the Fourth Amendment," <u>White</u>, 137 S. Ct. at 553, this Court should further the clear trend evidenced by the most recent Supreme Court decisions favoring application of the qualified immunity doctrine; find that Kaplan is protected by the doctrine in this situation; and enter summary judgment in his favor.

Based on the foregoing precedent, Officer Kaplan is entitled to qualified immunity for the additional reason that his conduct was objectively reasonable.  "Even if the right at issue was clearly established in certain respects … an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." <u>Walczyk v. Rio</u>, 496 F.3d 139, 154 (2d Cir. 2007).  Put differently, qualified immunity applies "if it was objectively reasonable for the official to believe that his acts did not violate those rights." <u>Tellier v. Fields</u>, 280 F.3d 69, 84 (2d Cir. 2000) (quoting <u>Russell v. Coughlin</u>, 910 F.2d 75, 78 (2d Cir. 1990)) (alterations omitted).  The inquiry is "not whether the [official] <u>should have</u>

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

acted as he did ... [i]t is instead whether <u>any</u> reasonable [official], out of the wide range of reasonable people ... <u>could have</u> determined that the challenged action was lawful." <u>Figueroa</u>, 825 F.3d at 100 (emphasis in original).

In this case, Kaplan was faced with a violently combative arrestee that was actively and physically resisting officers' efforts to control him and restore order to the booking area.  Because use of a Taser on an actively resisting individual was not proscribed by this circuit's case law, <u>see</u> <u>Penree</u>, 694 Fed. Appx. at 33, Kaplan's challenged Taser deployment cannot be objectively unreasonable.  Additionally, based on their observations, Lis and Cohen – like Kaplan – believed that the Taser was ineffective against Maldonado; Cohen Dep. at 92; Lis Dep. at 99-100; which rendered Kaplan's decision to continue cycling the Taser one that at least some officers would not have believed was unlawful.  The reality is, this was a tense, uncertain and rapidly evolving situation that presented a clear threat to officer safety and that had not been negated through any previously utilized law enforcement means, and Officer Kaplan's split-second decision to deploy his Taser at Maldonado was objectively reasonable.

In terms of the deliberate indifference claim, Officer Kaplan's conduct was objectively reasonable based on the information known to him.  That is, Kaplan had an understanding that Maldonado was intoxicated, Undisputed Facts ¶ 5, and, following the Taser deployment, he, Lis, Cohen and plaintiff all believed Maldonado was simply passed out due to intoxication.  <u>Id.</u> ¶¶ 34-35.  In Kaplan's law enforcement experience, it was not uncommon for drunk arrestees that have had physical interactions with police

to take time to "cool off," so Maldonado's post-Taser conduct was altogether unremarkable.  Kaplan Dep. at 178-79.  Critically, the reasonableness of his belief that Maldonado was simply passed out is bolstered by Maldonado's breathing.  <u>See</u> Undisputed Facts ¶ 33.  Notably, plaintiffs have not adduced a quark of evidentiary matter to call into question Kaplan's steadfast assertion that he had no knowledge and no belief that Maldonado was experiencing some cardiac or other medical episode.  Kaplan Dep. at 186, 189, 196.

When manifested symptoms indicate intoxication but not the ultimate cause of death or harm, government officials are not liable for deliberate indifference.  <u>See</u>, <u>e.g.</u>, <u>Childress v. Harms</u>, 449 Fed. Appx. 758, 761 (10th Cir. 2011) (nurse not deliberately indifferent where plaintiff exhibited symptoms of intoxication and no evidence of "symptoms obviously indicat[ing] a stroke …"); <u>Martinez</u>, 563 Fed. Appx. at 1090-91 (officers not deliberately indifferent where they "subjectively knew that [the plaintiff] was intoxicated, but there [wa]s no evidence to show that anyone would have known that [the plaintiff] would face an imminent heart attack or death …").  Regardless, Maldonado was the subject of almost constant observation, Undisputed Facts ¶¶ 31-32, and, as soon as it became apparent that medical assistance was needed, it was requested and materialized within five minutes of the initial request.  <u>Id.</u> ¶¶ 36, 39.  That there was no unreasonable delay in requesting medical assistance cements the propriety of qualified immunity.  <u>See</u> <u>Bradway</u>, 826 F. Supp. 2d at 472 (no qualified immunity where officers waited 1 hour and 45 minutes from the known ingestion of

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

cocaine to transport the decedent to the hospital); <u>Stanley</u>, 2012 WL 2367386, at *4 (no deliberate indifference where the plaintiff received treatment at hospital within a half hour of being tased).[6]

F.    PLAINTIFFS' § 1985 CONSPIRACY CLAIM FAILS AS A MATTER OF LAW

To prevail on a conspiracy claim under § 1985(3), a plaintiff must prove: "(1) a conspiracy, (2) for the purpose of depriving any person or class of persons the equal protection of the laws .... (3) an act in furtherance of the conspiracy, (4) whereby a person is .... deprived of a right or privilege of a citizen." <u>L.K. v. Sewanhaka Central High School Dist.</u>, 641 Fed. Appx. 56, 59 (2d Cir. 2016) (citation omitted).  Of crucial importance, there must be credible evidence that the purported conspiracy was motivated by some class-based animus.  <u>Id.</u> (citation omitted).

In this case, plaintiffs allege that "Kaplan, Lis, and Cohen entered into an implicit and tacit agreement to act in concert for the purpose of depriving Plaintiffs of equal protection of the laws." Compl. ¶ 72.  This claimed conspiracy purportedly included "an agreement to use excessive force against Plaintiffs … to subject [plaintiffs] to brutality … [and] to deny immediate medical attention for the serious medical needs of Maldonado … based on [their] race, ethnicity, ancestry and/or heritage …" <u>Ibid.</u>

In the Second Circuit, "there can be no actionable conspiracy under the civil rights laws if the alleged conspirators are employees of a single organization and their

_____

6 Officer Kaplan incorporates by reference all qualified immunity arguments, with any points and authorities, raised by his co-defendants.

alleged actions were taken in the course of their employment." <u>Ahmed v. Gelfand</u>, 160 F. Supp. 2d 408, 413 (E.D.N.Y. 2001) (citing <u>Girard v. 94th St. and Fifth Ave. Corp.</u>, 530 F.2d 66, 71 (2d Cir. 1976)); <u>Hartline v. Gallo</u>, 546 F.3d 95, 99 n.3 (2d. Cir. 2008) (applying intracorporate conspiracy doctrine to preclude § 1985 action against police department and its officers).  In the present case, Lis, Cohen and Kaplan were Town police officers, and all of Kaplan's conduct was law enforcement in nature and taken in the course of his municipal employment.  This undeniable truth, combined with the total absence of evidence indicating that Kaplan was pursuing some undefined personal interests separate and apart from those of the Town, is dispositive of plaintiffs' claim.  <u>See</u> <u>Roberts v. City of New Haven</u>, 210 F. Supp. 3d 347, 356-57 (D. Conn. 2016).

      Putting aside this insurmountable obstacle, plaintiffs' claim fails for the additional reasons that there is neither evidence of a true meeting of the minds nor of any motivating racial animus.  Kaplan has categorically denied being motivated by the plaintiffs' ethnicity or race.  Kaplan Dep. at 202-03.  In direct contradiction to the naked complaint allegations, Ramos has testified that Kaplan did not use any racially insensitive language toward him, Undisputed Facts ¶ 45, nor did Kaplan display any conduct that plaintiff found to be racially motivated.  <u>Id.</u> ¶ 46.  Rather than adducing probative evidence to support the claim, plaintiffs have merely announced their protected classes, have alleged misconduct and now ask the Court "to conclude that it must have been related to [their] race. This is not sufficient." <u>Lizardo v. Denny's, Inc.</u>, 270 F.3d 94, 104 (2d Cir. 2001).

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

The record is likewise devoid of any evidence of a "meeting of the minds." There is nothing from which it may be reasonably inferred that defendants "entered into an agreement, express or tacit, to achieve the unlawful end," as plaintiffs cannot present any proof of where and when the agreement was consummated, or specific communications suggestive of a conspiratorial agreement.  Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003).  Without this requisite evidentiary support, plaintiffs' conspiracy claim is substantively deficient, and judgment in the favor of Kaplan should enter.

G.     PLAINTIFFS' NEGLIGENCE, WRONGFUL DEATH AND RECKLESSNESS CLAIMS FAIL FOR A VARIETY OF RECOGNIZED REASONS

In addition to the federal civil rights claims, plaintiffs have brought claims for negligence (Fifth Count), and the Estate has asserted a wrongful death claim pursuant to General Statutes § 52-555 (Sixth Count) and a recklessness claim (Seventh Count). The Estate's negligence and recklessness claims fail because the wrongful death statute is the exclusive remedy for ante-mortem damages stemming from the conduct that is posited to have also caused Maldonado's death.  Even if the Court were to conclude otherwise, the negligence and wrongful death claims are barred by the common law doctrine of governmental immunity, as codified in General Statutes § 52-557n(a)(2)(B), and the reasonableness of Kaplan's conduct cannot support the causes of action.

1.     The Exclusivity Issue

§ 52-555(a) permits a decedent's estate to recover for injuries resulting in death from "the party legally at fault for such injuries just damages together with the cost of

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

reasonably necessary medical, hospital and nursing services, and including funeral expenses[.]"  In cases where the plaintiff has sought to recover damages for the death itself and the tort that brought about that death, the Connecticut Supreme Court has been unambiguous:

> To avoid misunderstanding, it perhaps should be pointed out that where damages for death itself are claimed in an action based on our wrongful death statute, recovery of any ante-mortem damages flowing from the same tort must be had, if at all, in one and the same action.  In other words, *__there cannot be a recovery of damages for death itself under the wrongful death statute in one action and a recovery of ante-mortem damages, flowing from the same tort, in another action__*.

Marsala v. Yale New Haven Hosp., Inc., Nos. AANCV126010861, AANCV126011711, 2015 WL 1727653, at *9 (Conn. Super. Ct. Mar. 19, 2015) (quoting Floyd v. Fruit Industries, Inc., 144 Conn. 659, 669 (1993)); accord Lynn v. Haybuster Mfg., Inc., 226 Conn. 282, 294 n.10 (1993) ("if the injuries were not fatal, the victim's action survives his death.  If the injuries were fatal, an action for wrongful death allows the victim to recover damages suffered before death as well as after.") (internal citations omitted).

Here, the Estate claims that Kaplan was negligent in that, among other things, he "used excessive, unreasonable and/or dangerous force," "failed to provide … prompt and appropriate medical care," and "failed to take measures to protect the health and safety of" Maldonado.  Compl. ¶¶ 62(a)-(b), (e).  These are the same bases on which the Estate brings the wrongful death claims.  Compare ibid., with id. ¶¶ 90(a)-(d).  Thus, the Estate seeks the recovery of ante-mortem damages and damages for death itself that "flow[] from the same tort," and recovery in such a case "must be had, if at all, in one

and the same action." <u>Floyd</u>, 144 Conn. at 669.  Consequently, the wrongful death statute provides the sole and exclusive remedy for the damages sought, and plaintiff's negligence claim is unsustainable.  <u>Id.</u>; <u>Marsala</u>, 2015 WL 1727653, at *8-10; <u>Vaccaro v. Loscalzo</u>, No. CV166062726S, 2017 WL 4508760 (Conn. Super. Ct. Aug. 24, 2017); <u>Wilson v. Visiting Nurses Srvs. Of Conn., Inc.</u>, No. CV065005742, 2007 WL 4577996, at *7 (Conn. Super. Ct. Nov. 4, 2007).[7]

      2.      **Governmental Immunity**

Plaintiffs complain that:

a.      Defendants Kaplan, Lis, and Cohen used excessive, unreasonable, and/or dangerous force, including but not limited to deadly force by discharging a Taser or by delivering blunt force trauma to the head, in lieu of less violent alternatives;

b.      Defendants Kaplan, Lis, and Cohen failed to provide, cause to be provided, and/or summon, prompt and appropriate medical care to individuals injured during the course of police operations;

c.      Defendants unreasonably created danger or increased Plaintiffs' risk of harm;

d.      Defendants Kaplan, Lis, and Cohen failed to use only generally-accepted law enforcement procedures and tactics that are reasonable and appropriate;

e.      Defendants Kaplan, Lis, and Cohen failed to take measures to protect the health and safety of the plaintiffs that a reasonably prudent police officer would have done under the circumstances; and

---

[7] This same reasoning bars the recklessness claim.  While the Estate could have presented different theories under the wrongful death claim, including recklessness, bringing a separate and distinct claim for common law recklessness is proscribed.  <u>See</u> <u>Monterio v. Crescent Manor, LLC</u>, No. CV030181589S, 2004 WL 1245906, at *2 (Conn. Super. Ct. May 21, 2004) (noting that rule does not prevent an executor "from advancing alternative theories of recovery, or causes of action, <u>*pursuant to the wrongful death statute*</u>.") (emphasis added).

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

  f. **Defendants failed to make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs.**

Compl. ¶¶ 62(a)-(e), (h).  Governmental immunity jurisprudence counsels that Kaplan cannot be held liable for the decidedly discretionary law enforcement actions of which plaintiffs complain.

  Municipalities are immune from liability for the discretionary governmental conduct of their agents.  <u>Grady v. Somers</u>, 294 Conn. 324, 348 (2009); Conn. Gen. Stat. § 52-557n(a)(2)(B).[8]  Discretionary act immunity "reflects a value judgment that - despite injury to a member of the public - the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." <u>Violano v. Fernandez</u>, 280 Conn. 310, 318 (2006).

  In Connecticut, it is well-settled that the operation of a municipal police department and the acts and omissions related thereto are discretionary as a matter of law.  <u>Coley v. City of Hartford</u>, 312 Conn. 150, 164 (2014).  It has also been recognized that there is "considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis." <u>Id.</u> at 165.  "The

---

[8]  Connecticut General Statutes § 52-557n(a)(2)(B) provides in pertinent part: "[A] political subdivision of the state shall not be liable for damages to person or property caused by ... negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Superior Court has [also] ... determined that [t]he investigation of crimes and the decisions to make arrests for them is clearly a discretionary rather than a ministerial function." <u>Escobales v. New Britain</u>, No. CV064009470S, 2006 WL 1461072, at *2 (Conn. Super. Ct. May 5, 2006); <u>Skrobacz v. Sweeney</u>, 49 Conn. Supp. 15, 32 (2003); <u>Mikita v. Barre</u>, No. CV990430564, 2001 WL 651171, at *3 (Conn. Super. Ct. May 22, 2001); <u>Peters v. Greenwich</u>, No. CV950147192S, 2001 WL 51671, at *3 (Conn. Super. Ct. Jan. 2, 2001). Most concisely, "police officers are protected by discretionary act immunity when they perform the typical functions of a police officer." <u>Smart v. Corbitt</u>, 126 Conn. App. 788, 800 (2011) (internal quotations omitted).

Kaplan's material participation in the incident is confined to his Taser deployment and the brief time period immediately following, as Ramos has conceded that Kaplan was not involved in his arrest and used no force on him.  Undisputed Facts ¶ 3, 44-46. There can be no doubt that all of plaintiffs' allegations concern the purported misperformance of typical functions of a police officer.  <u>See</u> Compl. ¶¶ 62(a)-(e), (h). Moreover, "[i]n order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner." <u>Coley v. Hartford</u>, 140 Conn. App. 315, 323 (2013), <u>aff'd</u>, 312 Conn. 150 (2014).  There is an absence of such evidence in this matter.  Thus, Kaplan was engaged in discretionary governmental functions for which he is entitled to governmental immunity.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

To hold a municipality liable for the alleged negligent performance of a discretionary governmental function, a plaintiff must demonstrate that there is at least a disputed issue of material fact as to whether one of the three recognized exceptions to the discretionary act immunity codified in General Statutes § 52-557n(a)(2)(B) applies. Here, there can be no true dispute that the first exception – "where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws" – is not in play.  Evon v. Andrews, 211 Conn. 501, 505 (1989). The second exception – "where the alleged acts involve malice, wantonness or intent to injure, rather than negligence" – is equally inapplicable.  Id.  This is because "claims caused by wonton, reckless or malicious conduct[] by their very nature ... do not sound in negligence." Schofield v. Magrey, Civil No. 3:12cv544 (JBA), 2015 WL 521418, at *13 (D. Conn. Feb. 9, 2015) (citing Hamilton v. Lajoie, 660 F. Supp. 2d 261, 265–66 (D. Conn. 2009)).  Consequently, the lone exception conceivably applicable to plaintiffs' claims arises "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm," Evon, 211 Conn. at 505, however, this exception "has received very limited recognition in this state." Grady, 294 Conn. at 350.

To invoke the "identifiable victim/imminent harm" exception, a plaintiff must establish: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to an imminent harm." Edgerton v. Town of Clinton, 311 Conn. 217, 230-31 (2014).  "All three

elements [of the exception] must be proven in order for the exception to apply."  **Id.**  As demonstrated below, there is no genuine issue of material fact that plaintiffs cannot satisfy any prong of the exception.

Neither plaintiff was exposed to imminent harm.  In determining whether a harm is imminent, courts must inquire "whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." **Haynes v. City of Middletown**, 314 Conn. 303, 322-23 (2014).  The "imminent harm" prong is very restrictive insofar as a harm cannot be imminent for the purposes of the exception if it "could have occurred at any future time or not at all."  **Id.** at 322 (citing **Evon**, 211 Conn. at 508).

Moreover, for the exception to apply, the harm at issue must be physical in nature.  **Celotto v. Brady**, No. CV065003279, 2008 WL 2313331, at *11 (Conn. Super. Ct. May 14, 2008) (granting summary judgment on plaintiff's negligent infliction of emotional distress claim because there was no evidence of physical harm of the type that Connecticut courts have recognized under the "identifiable person/imminent harm exception"); **Waller v. City of Middletown**, 50 F. Supp. 3d 171, 196 (D. Conn. 2014) (noting that exception required physical harm to apply), **vacated in part on other grounds**, 89 F. Supp. 3d 279 (D. Conn. 2015); **Chipperini v. Crandall**, 253 F. Supp. 2d 301, 312 (D. Conn. 2003) ("Although [the imminent harm] exception to governmental immunity is not well developed in Connecticut law it appears that the type of harm

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW

500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

required is physical harm or personal danger."); <u>Milardo v. City of Middletown</u>, No.

3:06cv01071 (DJS), 2009 WL 801614, at *9 (D. Conn. Mar. 25, 2009) (citing <u>Chipperini</u> and

concluding that imminent harm exception did not apply to officers who may have

unlawfully entered residence).

Here, to the extent that Ramos contends that Kaplan's alleged conduct caused

him some harm, there is certainly no evidence that such harm is or was physical in

nature.  As for Maldonado, he was not subjected to imminent harm because "it was

[not] apparent to [Kaplan] that the [Taser deployment] was so likely to cause [death]

that [Kaplan] had a clear and unequivocal duty to act immediately to prevent the" death.

<u>Haynes</u>, 314 Conn. at 322-23.  Specifically, while Kaplan understood it was "[v]ery

unlikely" that a Taser could produce death and that targeting the chest and cycling the

Taser for more than 15 seconds could be increased risk factors, Kaplan Dep. at 84-85,

87-88, 96-98, Maldonado did not exhibit any signs of true distress or impending death.

<u>See</u> Undisputed Facts ¶¶ 31-35.  Rather, all of Maldonado's demonstrative behavior

indicated to officers (and even his own brother) that he was simply passed out from

over-drinking.  <u>Id.</u> ¶¶ 34-35.  Importantly, Kaplan has never wavered that, from his

perspective, the Taser appeared ineffective, Undisputed Facts ¶ 25, and that belief was

shared by the other law enforcement officers – individuals who have experience with a

Taser, have had occasion to use one, and have observed the physical effects of a

successful deployment.  Therefore, Kaplan was uncertain whether Maldonado was

receiving electrical current.  Quite simply, there was nothing that Officer Kaplan could

divine from what he knew that would have put him on sufficient notice that he "had a clear and unequivocal duty to act immediately to prevent" Maldonado's death. <u>Haynes</u>, 314 Conn. at 322-23.[9]

This same reasoning also renders plaintiffs unable to raise a triable factual dispute as to the exception's apparentness prong.  Under Connecticut law, "[i]n order to meet the apparentness requirement, the plaintiff must show that the circumstances would have made the government agent aware that his or her acts or omissions would likely have subjected the victim to imminent harm." <u>Edgerton</u>, 311 Conn. at 231 (internal citations and quotation marks omitted).  Based on the information known to Kaplan, as set forth above, nothing suggested that the challenged Taser deployment was likely to subject Maldonado to death.  Without such an awareness, governmental immunity shields Kaplan from liability.  <u>See</u>, <u>e.g.</u>, <u>Edgerton</u>, 311 Conn. at 238 ("Although flashing blue courtesy lights, high speed, and tailgating might have indicated to the occupants of the Infiniti that Vincent was pursuing them, Vece was not aware of these facts, and, thus, it could not have been apparent to her that a dangerous vehicular pursuit was in progress."); <u>Maselli v. Regional School District #10</u>, No. HHDCV156062402S, 2018 WL 3337053, at *5 (Conn. Super. Ct. June 11, 2018) (that minor plaintiff "briefly had a bloody nose and felt dizzy … had a headache … did not ask to sit out the rest of practice and

---

[9] Further, because "it is impossible to be an identifiable person in the absence of any corresponding imminent harm," <u>Doe v. Peterson</u>, 279 Conn. 607, 620-21 (2006), plaintiffs also cannot qualify as an identifiable victims.

**Karsten & Tallberg, LLC •** ATTORNEYS AT LAW

500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

was able to walk from the indoor gym to the field outside" did not make it apparent that she "had suffered a concussion or that a failure to immediately contact the plaintiff would subject [the minor] to the imminent harm of exacerbated post-concussion symptoms.").[10]

   3.   Reasonable Conduct Cannot Support A Wrongful Death Claim

Connecticut law authorizes the use of physical force by an officer when that officer "reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense …; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." Conn. Gen. Stat. § 53a-22(c).

With respect to the contentions that Kaplan was negligent in utilizing force, they cannot withstand this Motion for those reasons set forth more fully above, namely, the Taser deployment was reasonable because Maldonado was actively fighting with officers and, from the vantage point of reasonable, on-scene officers, the apparent ineffectiveness of the Taser required its additional cycling to sufficiently thwart the threat.  See Part IV(C), (E).  And as more fully set forth above, see Part IV(D)-(E), the nearly constant observation of Maldonado post-Taser deployment and the quickness with which medical attention was requested as soon as there was some indication of a

---

[10] Kaplan incorporates by reference any governmental immunity argument presented by his co-defendants, with all points, authorities and supporting evidence.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

serious medical need leaves the presence of unreasonable conduct unquestionably wanting.  For all these reasons, plaintiffs' negligence and wrongful death causes of action against Kaplan must fail.[11]

### H.   SUBSTANTIVE DEFICIENCIES PLAGUE PLAINTIFFS' CONNECTICUT CONSTITUTION CLAIMS

Plaintiffs have presented claims for violations of Article First, §§ 7, 8, and 9 of the Connecticut constitution (Fourth Count).  Firmly established law confirms that at least one of those sections does not provide for private cause of action, and, given the undisputed circumstances in this case, Kaplan did not engage in the type of "egregious" conduct mandated under state law.

State courts have consistently "rejected a private cause of action under article first, [Section] 8 of the Connecticut constitution." Jordan v. Town of Windsor, No. 3:17-cv-427 (MPS), 2018 WL 1211202, at *4 (D. Conn. Mar. 8, 2018) (citation omitted); see ATC Partnership v. Windham, 251 Conn. 597, 612-17 (1999) (collecting case); Muhmmad v. Murphy, 632 F. Supp. 2d 171, 177-78 (D. Conn. 2009).  For this reason alone, plaintiffs' § 8 claims must be dismissed as a matter of law.

In Binette v. Sabo, 244 Conn. 23 (1998), the Connecticut Supreme Court held that a private right of action for money damages existed for alleged violations of the search and seizure (§7) and false arrest (§9) sections of the Connecticut constitution.  244

---

[11] It is well established that recklessness requires a showing greater than that required to prove gross negligence.  Suffield Development Associates Ltd. Partnership v. National Loan Investors, L.P., 97 Conn. App. 541, 577, cert. denied, 280 Conn. 942, 943 (2006).  For all of the reasons set forth in Part IV(G), the Estate's claim for recklessness (Seventh Count) fails as a matter of law.

Conn. at 25-26.  The Connecticut Supreme Court has consistently looked to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and its federal progeny as a guide in determining whether to create a <u>Bivens</u> action for an alleged state constitutional violation.  <u>See</u> <u>Kelley Property Development, Inc. v. Lebanon</u>, 226 Conn. 314, 334-38 (1993); <u>see</u> <u>also</u> <u>ATC Partnership v. Windham</u>, 251 Conn. 597, 613-14 (1999).  <u>Bivens</u> claims are judicially-created causes of action for money damages against federal actors who deprive individuals of constitutional rights. <u>See</u> <u>Bivens</u>, 403 U.S. at 396–97; <u>Higazy v. Templeton</u>, 505 F.3d 161, 169 (2d Cir. 2007). Thus far, the Connecticut Supreme Court has been reluctant to create private causes of action for money damages under the Connecticut constitution.

In <u>Binette</u>, the plaintiffs alleged that police officers entered their residence without warrant, threatened the wife with arrest and pushed her over a table.  <u>Id.</u> at 26. The plaintiffs also alleged that the police repeatedly slammed the husband's head against a car, struck him in the head and kicked him while he was on the ground, purportedly experiencing an epileptic episode.  <u>Id.</u>  The Connecticut Supreme Court stressed that, although it found a private right of action, that finding was strictly limited to the specific circumstances of the case, and whether to recognize a cause of action for purported violations of the state constitution must be determined on a case-by-case basis.  <u>Id.</u> at 48.

Following <u>Binette</u>, Connecticut courts "have significantly curtailed private rights of action under Article I, Sections 7 and 9, limiting the availability of a private cause of

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

action to circumstances involving egregious violations." <u>Nelson v. City of Stamford</u>, No. 3:09CV1690(VLB), 2012 WL 233994, at *12 (D. Conn. Jan. 25, 2012); <u>accord</u> <u>Bauer v. City of Hartford</u>, No. 3:07CV1375(PCD), 2010 WL 4429697 (D. Conn. Oct. 29, 2010).  For example, in <u>Martin v. Brady</u>, 64 Conn. App. 433 (2001), the Appellate Court determined that the plaintiff's allegations that officers entered his home without a warrant, pushed him to the ground and smashed the windows and doors of his residence did not rise to the requisite level of egregiousness necessary to properly support an action under <u>Binette</u>.  <u>Martin</u>, 64 Conn. App. at 440-41.  In accordance with this decision law, this Court has declined to recognize a private cause under § 9 because the circumstances did not rise to the necessary level of egregiousness, where the plaintiff was struck with a baton until he fell to the ground and could be handcuffed.  <u>Faulks</u>, 2010 WL 259076, at *9–10.

The physical confrontation in this case is materially dissimilar to that present in <u>Binette</u>.  In particular, unlike <u>Binette</u>, Maldonado's head was not repeatedly slammed; he was not struck and kicked in the head while seizing on the ground; and neither Maldonado nor Ramos was threatened with arrest, pushed into a wall and thrown over a table.  240 Conn. at 26.  The objective video evidence confirms that Maldonado combatively resisted and fought with officers – behavior for which he demonstrated an unabated propensity.  This virtually omnipresent physical threat was met with a Taser deployment, only after verbal commands and strikes proved terribly ineffective.  Given this, the initial decision to utilize the Taser was not egregious, and its continued use

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

could not be egregious, especially accounting for the reasonable belief of the Taser's efficacy – or lack thereof.  Moreover, due to Ramos' unqualified admissions that Kaplan did not participate in his arrest, use force against him or undertake any racially biased act, the most basic factual basis for the state constitution claims is nonexistent.  This undisturbed reality compels judgment on these claims in Kaplan's favor.  See, e.g., Nelson, 2012 WL 233994, at *12; Faulks, 2010 WL 259076, at *9–10.

I.      RAMOS CANNOT ESTABLISH CERTAIN MANDATORY ELEMENTS OF HIS BYSTANDER EMOTIONAL DISTRESS CLAIM

As explained by the Connecticut Supreme Court:

[A] bystander may recover damages for emotional distress under the rule of reasonable foreseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response.

Clohessy v. Bachelor, 237 Conn. 31, 56 (1996).  As the state's high court later clarified, "a bystander emotional distress claim will lie only when the bystander's psychological injuries are both severe and debilitating, such that _they warrant a psychiatric diagnosis or otherwise substantially impair the bystander's ability to cope with life's daily routines and demands_." Squeo v. Norwalk Hosp. Ass'n, 316 Conn. 558, 585 (2015) (emphasis added).

**Karsten & Tallberg, LLC •** ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

In **Squeo**, the Connecticut Supreme Court affirmed the granting of the defendants' summary judgment motion on grounds that the plaintiff had not suffered severe and disabling emotional distress.  Specifically, the plaintiff had not obtained medical treatment for his emotional distress until four years after the death; he attended two counseling sessions at the VA; he was not prescribed any medication for his alleged distress; and there was no indication of any impact to the plaintiff's ability to work.  Id. at 597.  This evidence was insufficient to create a genuine dispute as to whether debilitating distress was suffered.  Id. at 600.

Ramos' evidence of his emotional distress is strikingly similar – and at least equally as weak – to that presented in **Squeo**, such that the case's reasoning and conclusion should govern.  Ramos has testified that he first sought treatment for his purported mental upset roughly three and one-half years *after* the incident, in the summer of 2017.  Undisputed Facts ¶ 47.  This is despite Ramos being entitled to attend ten counseling sessions per year through the Employee Assistance Program offered by his employer.  Id. ¶ 48.  After finally availing himself of this known benefit, Ramos attended a paltry three counseling sessions in the summer of 2017 with a Licensed Clinical Social Worker.  Id. ¶ 49.  Although the social worker offered to continue counseling Ramos, if Ramos felt like he needed it, Ramos has not sought additional mental health treatment.  See id. ¶ 50.  Considering this limited treatment, it is not surprising that Ramos has not been diagnosed with any mental health malady, including post-traumatic stress disorder.  Id. ¶ 52.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Further militating against finding that Ramos suffered severe and debilitating emotional distress is his unmitigated ability to function daily.  That is, since the incident, Ramos has worked a demanding full-time job at the North Central Area Agency on Aging, where he is responsible for the company's human resource functions, general business operations and certain aspects of information technology.  Co-defs.' 56(a)(1) Statement ¶ 54.  Add to that the fact that, in 2018, Ramos was in the throes of a master's program in technology management and was slated to graduate in May of this year.  Ibid.  Plainly, Ramos was not only able to "cope with life's daily routines and demands," but he was able to successfully manage a full-time job and the rigors of graduate academia.  Squeo, 316 Conn. at 592.

In sum, Ramos has not suffered some of the most common indicia of severe emotional distress, such as "the need for ongoing mental health care and the inability to pursue [his] chosen vocation[]." Squeo, 316 Conn. at 597.  There is no official diagnosis of any mental health condition, nor a documented need for medication; and Ramos' own actions reveal not only his ability productively function daily, but better himself by completing an academically intensive and challenging graduate program.  In light of the uncanny similarities between Ramos' purported "emotional distress" and that claimed in Squeo, Ramos has not suffered sufficiently severe and debilitating emotional distress.

V.      **CONCLUSION**

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

For the foregoing reasons, defendant Jason Kaplan respectfully requests that the Court enter summary judgment in his favor on the plaintiffs' entire complaint.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

**DEFENDANT, JASON KAPLAN**

BY**/ss/James N. Tallberg**
**James N. Tallberg**
**Federal Bar No.: ct17849**
**Dennis M. Durao**
**Federal Bar No.: ct29271**
**Karsten & Tallberg, LLC**
**500 Enterprise Drive, Suite 4B**
**Rocky Hill, CT 06067**
**T: 860-233-5600**
**F: 860-233-5800**
**jtallberg@kt-lawfirm.com**
**ddurao@kt-lawfirm.com**

## CERTIFICATION

I hereby certify that on October 16, 2018 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

**/ss/Dennis M. Durao**
**Dennis M. Durao**

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030