## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

| | |
|---|---|
| **WILSON RAMOS, As Administrator of the** ) | |
| **Estate of Jose A. Maldonado, and** ) | |
| **Individually,** ) | **Civil Action No.** |
| **Plaintiffs,** ) | **3:16-cv-00166 (VLB)** |
| ) | |
| ) | |
| **V.** ) | |
| ) | |
| **TOWN OF EAST HARTFORD, OFFICER** ) | |
| **JASON KAPLAN, SERGEANT JAMES LIS,** ) | |
| **OFFICER JASON COHEN, and CHIEF** ) | |
| **SCOTT SANSOM OF THE EAST HARTFORD** ) | |
| **POLICE DEPARTMENT** ) | |
| **Defendants.** ) | **JULY 3, 2019** |

_____)

### REPLY IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE DEFENDANTS' EXPERT WITNESS, MARK W. KROLL, FROM TESTIFYING ON CERTAIN TOPICS

Plaintiffs submit this reply memorandum to respond to certain arguments made by Defendants in their objection.

First, Defendants argue that Kroll is uniquely well-qualified to testify. Plaintiffs do not seek to preclude Kroll's testimony in its entirety; rather, Plaintiffs seek to preclude Kroll's testimony only as to those areas on which he is not qualified to testify as an expert or that do not bear on the issues in suit.  Plaintiffs acknowledge that Kroll has testified on many occasions, often on behalf of Taser International, Inc., now known as Axon Enterprise, Inc. ("Axon"), in lawsuits arising out of the use of its weapons.  Dr. Kroll is a member of Axon's Board of Directors, a member of its Scientific Advisory Board, a paid consultant to the corporation, and a large stockholder.  Axon is not a party to this litigation,

however, and Plaintiffs have made no product liability claims against the Taser weapon; rather, their claims relate to Defendant Kaplan's misuse of his weapon, in a manner inconsistent with his training and applicable guidelines.

Second, the fact that Kroll is not a medical doctor is not irrelevant.  He is being offered by the defense to rebut the testimony of Dr. Robert Myerburg, an expert cardiologist, and Dr. James Gill, an expert pathologist and Connecticut's Chief Medical Examiner.  Both Dr. Myerburg and Dr. Gill made medical diagnoses that Jose Maldonado suffered heart arrhythmia caused by the disruption of his heart rhythm by the discharge of a Taser to his chest in the vicinity of his heart and died of a sudden cardiac arrest.   The official autopsy for Jose Maldonado states in relevant part that Jose Maldonado died from "cardiac arrhythmia following precordial electrical shock."  Kroll is a skilled, knowledgeable, and well-trained Taser partisan, but he is not qualified to offer a medical opinion as to a diagnosis of the nature of the injury and the cause of the unconsciousness and death following the Taser strike to Jose Maldonado's chest.   Indeed, Defendants have identified three qualified medical experts—Dr. Charles Wetli (a pathologist), Dr. Richard Luceri (a cardiologist), and Dr. Gary Vilke (an emergency room specialist)—for just this purpose.   The jury will be misled and confused and Plaintiffs prejudiced if the Court permits an expert on the operation of the Taser to venture into the medical issues of the cause of injuries and the cause of death.

Third, Defendants' argument that Kroll is not opining on what caused Jose Maldonado's death but only that the Taser did not cause his death is a distinction without a difference.  Kroll is not qualified to opine on the medical cause of death

in this case, *either affirmatively or negatively*.  Defendants insist that Kroll is entitled to contradict the medical judgment and testimony of the Medical Examiner (who supervised the autopsy and signed the autopsy report) and the testimony of Dr. Myerburg (a noted cardiologist and electrophysiologist who carefully reviewed all of the medical records as well as the videotaped confrontation of the Taser firing and its aftermath) based on Kroll's nonmedical credentials and opinions.  *Daubert* and Rule 702 insist on expertise that Kroll simply does not have.  He can offer the jury information about the operation of Tasers, but he cannot opine on the medical cause of death in this case, either affirmatively or negatively, without usurping a role in the trial for which he is not qualified.

Fourth, although Plaintiffs do not question that Kroll is well-versed in the relative safety of the Taser in comparison to other weapons, this is not a matter placed in issue by the pleadings in this case.  The Town of East Hartford's use of force policy (attached as Exhibit I) classifies the Taser as a less-lethal weapon, as do most other American law enforcement agencies—that is, a Taser has the potential to kill, but it is considerably less likely to cause lethal harm that weapons uniformly acknowledged as lethal, including the handguns, shotguns, or assault weapons issued to police officers by their agencies.  Kroll often testifies and lectures about the safety qualities of Tasers when the manufacture of the weapon is under attack, but that has no bearing on the factual issues in the present case. The question before the jury will be whether the Taser was used improperly by Defendant Kaplan so as to cause the death of Maldonado, not

whether Tasers are generally safe, whether the benefits of Tasers outweigh the risks, or any of the numerous other irrelevant opinions asserted by Kroll.

Fifth, although Plaintiffs concede that Kroll can testify to the amount of electrical current Maldonado would have been exposed to based on Kroll's hypothesis that the wire was severed almost immediately after the darts embedded in Jose's chest, Kroll cannot testify as to when the wire was severed because it is outside Kroll's expertise, is speculation and unreliable, and will not assist the jurors, who will have to draw their own conclusions.

Similarly, Plaintiffs concede that Kroll can testify to the sound emitted by a Taser when one of the wires is broken, but he cannot testify that the sound was in fact emitted in the holding cell on April 13, 2014.  The issue whether there was any popping noise that would have been a sign the Taser was not functioning is subject to heated dispute.  Wilson Ramos, who was present, testified positively that there was no popping or other sound emitted by Defendant Kaplan's weapon. None of the officers claimed that there was any such sound in their reports prepared a few days after the fatal episode.  Not one of them advanced any claim about a sound until nearly four years after the incident during their depositions, long after the retention of Dr. Kroll as a defense witness.  This new testimony contradicted the written statement made by Kaplan is his incident report in April, 2014 in which he described holding Maldonado "under power" until the handcuffing had been completed.   Kroll cannot weigh in on that fact issue, which must be resolved by the jury, as it is outside the scope of expertise.  Whether Kroll chooses to believe the new versions about popping noises advanced by the

4

officers after he was hired or the observation by Wilson Ramos based on his experience on the night in question (which is consistent with the 2014 incident report by Kaplan) is irrelevant.

Finally, with Defendants' concession that Kroll may not offer his opinion as to whether Maldonado was resisting, Plaintiffs will not seek to preclude Dr. Kroll from testifying as to body movements he claims are inconsistent with Maldonado suffering from the effects of Taser current during the seconds that he remained conscious.  The problems with Kroll's testimony in that regard, Plaintiffs acknowledge, go to its weight and not its admissibility.  Given Defendants' concession that Dr. Kroll may not testify as to whether Maldonado was resisting, Kroll's theory that sober people do not resist police is rank speculation, not premised on any scientific data, and trespasses into the realm of a police expert, which Kroll admittedly is not.  It should therefore be precluded.

For the foregoing reasons, the Court should grant Plaintiffs' motion and preclude Kroll from testifying on the topics set forth in Plaintiffs' motion.

THE PLAINTIFF, WILSON RAMOS, AS
ADMINISTRATOR OF THE ESTATE OF
JOSE A. MALDONADO, and INDIVIDUALLY

By: /s/ Zachary J. Phillipps_____
David M. Cohen, Esq. (ct06047)
Leonard M. Braman, Esq. (ct30091)
Zachary J. Phillipps, Esq. (ct30047)
WOFSEY, ROSEN, KWESKIN
& KURIANSKY, LLP
600 Summer Street
Stamford, CT  06901
Tel: (203) 327-2300
Fax: (203) 967-9273

**Email: dcohen@wrkk.com**
**Email: lbraman@wrkk.com**
**Email: zphillipps@wrkk.com**

## CERTIFICATION

I hereby certify that on July 3, 2019, a copy of the foregoing was filed electronically and served by email on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by email or regular mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Thomas R. Gerarde, Esq.
Alan Raymond Dembiczak, Esq.
Beatrice S. Jordan, Esq.
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114-11921
Ph:    (860) 249-1361
Fax:   (860) 249-7665
Email: tgerarde@hl-law.com
Email: adembiczak@hl-law.com
Email: bjordan@hl-law.com

James N. Tallberg, Esq.
Dennis M. Durao, Esq.
Karsten & Tallberg, LLC
500 Enterprise Drive, Suite 4B
Rocky Hill, CT 06067
Ph:    (860) 233-5600
Fax:   (860) 233-5800
Email: jtallberg@kt-lawfirm.com
Email: ddurao@kt-lawfirm.com

Michael Brave, Esq.
17800 N. 85th Street
Scottsdale, AZ  85255
Email:  brave@axon.com

/s/ Zachary J. Phillipps
Zachary J. Phillipps, Esq. (ct30047)

7