UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
WILSON RAMOS, As Administrator of the )
Estate of Jose A. Maldonado, and )
Individually, ) Civil Action No.
    Plaintiffs, ) 3:16-cv-00166 (VLB)
)
)
V. )
)
TOWN OF EAST HARTFORD, OFFICER )
JASON KAPLAN, SERGEANT JAMES LIS, )
OFFICER JASON COHEN, and CHIEF )
SCOTT SANSOM OF THE EAST HARTFORD )
POLICE DEPARTMENT )
    Defendants. ) JULY 31, 2019
_____)

## MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT UNDER RULE 54(b)

Plaintiffs, Wilson Ramos as Administrator of the Estate of Jose Maldonado and Wilson Ramos individually, move the Court to direct entry of final judgment as to Plaintiffs' *Monell* claim against Defendants Town of East Hartford and Chief Scott Sansom (the Second Count of Plaintiffs' Third Amended Complaint) and to determine under Rule 54(b) that there is no just reason for delay. The entry of such judgment would advance the interest of judicial economy by eliminating the risk of a second trial necessitated by the *Monell* claim, while adding no undue burdens on this Court, the Court of Appeals, or the parties.

### BACKGROUND

This civil rights case arises out of the homicide of Jose Maldonado while in custody of the East Hartford Police Department on April 13, 2014. Plaintiffs have sued five defendants: the Town of East Hartford, Chief Scott Sansom, Sergeant

James Lis, and Officers Jason Kaplan and Jason Cohen.  In the Third Amended Complaint (Doc. 187), Plaintiffs set forth nine counts.  This Court granted Defendants' motions for summary judgment on the following claims:

(1) unreasonable search and seizure by Ramos against Defendant Lis;
(2) excessive force by Ramos against Defendant Lis;
(3) failure to intervene by the Estate against Defendants Kaplan, Lis, and Cohen;
(4) *Monell* by Ramos and the Estate against Defendants Town of East Hartford and Sansom;
(5) Connecticut Constitution Articles 7 and 9 by Ramos and the Estate against all Defendants;
(6) negligence by Ramos and the Estate against all Defendants;
(7) wrongful death by the Estate against Defendants Town of East Hartford and Sansom;
(8) false arrest by Ramos against Defendants Lis and Cohen;
(9) Conn. Gen. Stat. § 52-557n by Ramos and the Estate against Defendant Town of East Hartford.

(Docs. 189, 195).  The following claims remain for trial:

(1) excessive force by the Estate against Defendants Kaplan, Lis, and Cohen;
(2) deliberate indifference by the Estate against Defendants Kaplan, Lis, and Cohen;
(3) wrongful death by the Estate against Defendants Kaplan, Lis, and Cohen;
(4) bystander emotional distress by Ramos against Defendants Kaplan, Lis, and Cohen; and
(5) Conn. Gen. Stat. § 7-465 by Ramos and the Estate against Defendant Town of East Hartford.

(Docs. 189, 195).  Thus, there are no remaining claims against Defendant Sansom, and no remaining claims against Defendant Town of East Hartford except the statutory indemnification claim.

Defendants have filed notices of appeal (Docs. 207, 208) based on the Court's denial of qualified immunity.  Based on the pending interlocutory appeal, the Court administratively closed the case.  (Doc. 211).

2

Plaintiffs seek an entry of partial final judgment under Rule 54(b) as to their *Monell* claims (Second Count) against Defendants Town of East Hartford and Sansom. For the reasons set forth below, Plaintiffs' motion should be granted.

## STANDARD OF REVIEW

The decision whether to direct the entry of final judgment under Rule 54(b) "'is left to the sound judicial discretion of the district court' and 'is to be exercised in the interest of sound judicial administration.'" *Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1092 (2d Cir. 1992) (quoting *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980)). Entry of final judgment under Rule 54(b) should "be exercised sparingly." *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011).

Further, the Second Circuit has stated the following:

> So that we may effectively review the district court's exercise of discretion under the rule, we have suggested that it provide "a brief reasoned statement in support of its determination that 'there is no just reason for delay' * * * where the justification for the certificate is not apparent." . . . This requirement is not, however, jurisdictional, as we will proceed to the merits if the reasons for entering partial final judgment are "obvious". . . . If the question of whether judgment should have been entered is a close one, we will honor the district court's exercise of its discretion if it "will make possible a more expeditious and just result for all parties." . . . For us to conclude that the district court's discretion was abused its decision must be "clearly unreasonable".

*Id.* (citations omitted).

## LAW AND ARGUMENT

Rule 54(b) of the Federal Rules of Civil Procedure provides as follows:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). Rule 54(b) was promulgated to address "the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had." *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511–12 (1950).

According to the Second Circuit,

> to have a final judgment under the rule, (1) multiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make "an express determination that there is no just reason for delay" and expressly direct the clerk to enter judgment.

*Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992).

Here, all three prongs are met.

First, there are multiple claims and multiple parties. (Third Am. Compl., Doc. 187).

Second, Plaintiffs' *Monell* claim has been finally decided within the meaning of 28 U.S.C. § 1291. "If the decision 'ends the litigation [of that claim] on the merits and leaves nothing for the court to do but execute the judgment' entered on that claim, then the decision is final." *Ginett*, 962 F.2d at 1092 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). Here, the Court

4

granted Defendants' motion for summary judgment on the *Monell* claim. (Order re: Mots. Summ. J. 37–44, Doc. 189). Therefore, no claims under *Monell* remain, (*see id.* at 67 (listing claims remaining for trial)), and the only action remaining on this claim is for the Court to enter final judgment.

Third, there is no just reason for delaying the entry of final judgment on the *Monell* claim. "No precise test exists for determining whether there is a just reason to delay the entry of judgment that can be satisfactorily or easily applied in every case." 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2659, at 107 (4th ed. 2014). Although the advisory committee notes to the 1946 amendment to Rule 54(b) state that entry of a partial final judgment was "to afford a remedy in the infrequent harsh case," both the Supreme Court and Second Circuit have rejected that standard as too restrictive. *See Curtiss-Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 10 (1980) ("[T]he phrase 'infrequent harsh case' in isolation is neither workable nor entirely reliable as a benchmark for appellate review."); *Ginett,* 962 F.2d at 1095 ("In short, now that the garden-variety civil complaint often involves multiple claims and/or multiple parties, we cannot, as the Supreme Court has recognized, hide behind the old 'infrequent harsh case' chestnut. Nor, for that matter, should we rely on any other comparative adjectives like 'unusual', 'exceptional', or 'extraordinary' . . . .").

Instead, "[t]he proper guiding star, as the Supreme Court has emphasized, is 'the interest of sound judicial administration.'" *Ginett,* 962 F.2d at 1095 (quoting *Curtiss–Wright*, 446 U.S. at 8). Importantly, "sound judicial administration must involve a proper regard for the duties of both the district

court and the appellate court." *Id.* The Court must also take into account "the equities involved." *Curtiss-Wright Corp.*, 446 U.S. at 8. It is proper for the district court "to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.*

"[C]onsideration of 'the equities involved' may justify Rule 54(b) certifications by district courts which 'will speed resolution of the dispute . . . .'" *Topps Co. v. Cadbury Stani, S.A.I.C.*, No. 99 CIV. 9437 (CSH), 2006 WL 3247360, at *2 (S.D.N.Y. Nov. 7, 2006) (quoting *Kass v. Simon*, 137 F. App'x 382, 383 (2d Cir. May 11, 2005) (summary order)). This objective is "clearly achieved 'where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim were reversed in time to be tried with the other claims.'" *Id.* (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997)). *See Kass*, 137 F. App'x at 384 ("Disposition of this appeal will obviate the risk of a second trial covering substantially similar matters and will speed resolution of the dispute. . . . We therefore hold that the district court did not abuse its discretion in entering partial judgment."). *See also Jeffes v. Barnes*, 208 F.3d 49, 55-64 (2d Cir. 2000) (reversing the district court's granting of summary judgment on *Monell* claim after district court entered partial final judgment under Rule 54(b), thereby avoiding an expensive and duplicative trial).

For example, in an illustrative case, which arose out of a shooting death at the hands of the defendant police officer, the plaintiff brought claims under the Fourth Amendment (via 42 U.S.C. § 1983) and state tort claims, including wrongful death and negligence. *Torres v. City of Madera*, 655 F. Supp. 2d 1109, 1113, 1134 (E.D. Cal. 2009), *rev'd and remanded on the merits*, 648 F.3d 1119 (9th Cir. 2011). The district court granted the defendants' motion for summary judgment on the plaintiff's Fourth Amendment claim, leaving only the plaintiff's state tort claims. *Id.* at 1132. The court then granted the plaintiffs' motion for certification under Rule 54(b). The district court reasoned as follows:

> The court finds that judicial efficiency would be gained by an immediate appeal of the court's ruling on Plaintiffs' Fourth Amendment claim. As discussed in more detail in the court's order granting summary judgment, the court granted summary judgment on Plaintiffs' Fourth Amendment claim because the court found Officer Noriega's mistake was reasonable and she was entitled to qualified immunity. The exact legal confines of mistaken uses of force in the Fourth Amendment context are evolving and would be best explored by the Ninth Circuit at this stage of the litigation. Further, if this action went to trial now, the parties would have to try the remaining state law claims. The trial has been estimated to be at least three weeks. Regardless of the verdict, Plaintiffs could appeal the court's ruling on the Fourth Amendment claim. If the Ninth Circuit disagreed with this court's legal findings on the Fourth Amendment claim, a new trial on the Fourth Amendment claim would be required. Because of the overlapping nature of the state law claims and the Fourth Amendment claim, a new trial on all matters might be required. Allowing an appeal now would avoid the need for possibly two duplicative trials. This would conserve judicial resources and avoid the parties' expenditure of vast resources on trying a case twice.

*Id.* at 1135. The court of appeals held that summary judgment was improperly granted and therefore reversed and remanded. *Torres v. City of Madera*, 648 F.3d 1119, 1129-30 (9th Cir. 2011). Accordingly, the district court's certification under

7

Rule 54(b) did indeed conserve judicial resources by avoiding two duplicative trials.

In another case, the plaintiff was arrested for writing an obscenity-laced sentence on his payment of a speeding ticket, and the charges were later dismissed on First Amendment grounds. *Barboza v. Vill. of Liberty*, No. 13-CV-4067 (CS), 2016 WL 8653502, at *1 (S.D.N.Y. Jan. 21, 2016). The plaintiff sued the arresting officers, the district attorney, and the municipality under the First, Fourth, and Fourteenth Amendments. *Id.* The District Court granted summary judgment in favor of the arresting officers on qualified immunity grounds. *Id.* The court granted summary judgment on immunity grounds for the district attorney on his decision to *charge* the plaintiff, but regarding the district attorney's decision to *arrest* the plaintiff, the court denied the district attorney's motion for summary judgment and granted the plaintiff's motion for summary judgment. *Id.* The court also denied the municipality's motion for summary judgment, which made it the only claim remaining for trial. *Id.* The district attorney filed an interlocutory appeal as of right and the plaintiff moved for the entry of final judgment as to the arresting officers under Rule 54(b). *Id.*

The court granted the plaintiff's motion, explaining that, even though the inquiry concerning the officers was different than the inquiry concerning the district attorney, certification would "allow the Second Circuit to consider these closely related factual and legal questions concurrently and avoid 'piecemeal appeals.'" *Id.* at *3. "That the Second Circuit would have to consider 'additional issues,' . . . is not problematic considering how similar these issues are to those

which will already be raised and given that both appeals arise from the same factual scenario." *Id.* Finally, in response to the defendants' argument that the plaintiff had not shown a "danger of hardship or injustice" or a "unique" or "unusual" situation justifying deviation from the general rule, the court stated the following:

> While the Defendants may be correct that the Plaintiff has not shown a particularly "unique" or "unusual" injustice or hardship, . . . the U.S. Supreme Court has expressly criticized the use of this type of benchmark by courts reviewing motions for Rule 54(b) certification, finding it "neither workable nor entirely reliable." . . . The inquiry is centered not on how rare the circumstances are or what degree of hardship Plaintiff would face, but on whether certification would advance "judicial administrative interests," taking equitable considerations into account. . . . As discussed above, certification would indeed advance those interests.

*Id.* at *3 (citations omitted). Thus, the court found that there was no just reason for delay and entered final judgment pursuant to Rule 54(b). *Id.*

Similarly, here, certification would advance judicial administrative interests of this Court and of the Second Circuit. In this Court, permitting an appeal now would eliminate the risk of a second trial necessitated by the *Monell* claim, while adding no additional burdens on this Court. Because several claims remain for trial, including claims not subject to Defendants' interlocutory appeal, there will be a trial in this matter after the interlocutory appeal concludes, irrespective of the Second Circuit's decision. If Plaintiffs were required to wait until after trial to appeal the granting of summary judgment on the *Monell* claim, and the Second Circuit were to disagree with this Court's ruling, the parties and the Court would be required to undertake a lengthy, expensive second trial arising out of the same facts and including much of the same evidence and many of the same witnesses.

9

Permitting an appeal on the *Monell* claim now would eliminate this possibility because there will be an appellate ruling on whether the evidence adduced by Plaintiffs is sufficient to permit a jury to find a *Monell* violation.[1]

In the Second Circuit, an appeal of the *Monell* claim now does not present any risk of duplicative appeals dealing with the *Monell*-specific issues.  The issues raised by an appeal from the grant of summary judgment on Plaintiffs' *Monell* claim—whether there is a genuine issue of material fact that the municipal defendants had certain customs and policies that were a moving force behind Maldonado's death—are separable from and are not raised by the excessive force and state tort claims.[2]  Therefore, if Plaintiffs appeal the *Monell* summary judgment issue now, the Second Circuit would not have to decide the same issues again, even if there were a subsequent, post-trial appeal involving any of the other claims.  Further, this Court's discussion of the *Monell* issues consumed seven pages of a sixty-eight page opinion; the issue is a manageable one for appellate review within the context of the qualified immunity appeal that will be proceeding in the Court of Appeals in any event.

Next, consideration of the equities heavily favors entering final judgment on Plaintiffs' *Monell* claim now.  For the reasons explained above, allowing an

---

[1] This benefit has been reaped in this Circuit before.  For example, in *Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000), the district court, similar to the Court here, denied the individual defendants' motion for summary judgment and granted the county's motion for summary judgment on the *Monell* claim.  *Jeffes*, 208 F.3d at 55-56.  After the district court entered a partial final judgment under Rule 54(b) as to the *Monell* claims, the Second Circuit, without attacking the district court's ruling under Rule 54(b), reversed the district court's granting of summary judgment on the *Monell* claim.  *Id.* at 56-64.  Thus, the district court's entry of partial final judgment under Rule 54(b) provided the significant benefit of avoiding a second trial.

[2] The parties have estimated that if these issues are incorporated into the trial, they would add about a day to the trial.  At the recent telephonic conference conducted by the Court, all parties estimated that the Court's summary judgment ruling would reduce the trial length by at most a day.  On the other hand, requiring a second trial addressing the *Monell* issues alone would require much more than one additional day of the parties' and Court's time.

10

appeal now provides substantial benefits to the parties by eliminating the risk of an expensive second trial necessitated by the *Monell* claims. On the other hand, there is no added burden or prejudice on Defendants Town of East Hartford and Scott Sansom because they will be required to defend the appeal whether it occurs now or after trial.[3] Moreover, absent appellate review now, nothing in the trial record will further explicate the *Monell* issues for appellate review later, which is why, since the *Monell* record is now closed, there is no just reason to defer the appellate consideration of it.

Further, the usual concerns raised by interlocutory appeals are not present here. There is no risk of undue delay or interference with the proceedings in this Court because the individual Defendants have already filed interlocutory appeals from the Court's denial of qualified immunity, (Docs. 207 and 208), and the Court has administratively closed this case until the conclusion of Defendants' appeals, (Doc. 211). The record presented to the Court of Appeals on the *Monell* claim would not be materially more complex than the record presented by Defendants' appeal.[4] Thus, the concerns that could potentially be caused by Plaintiffs' appeal if the trial in this case were imminent do not exist here.

Plaintiffs acknowledge that a magistrate judge in this Circuit denied a Rule 54(b) motion for certification concerning *Monell* claims. *Richardson v. City of New York*, No. 04 CIV. 05314 (THK), 2007 WL 1732424, at *2–3 (S.D.N.Y. June 14, 2007). In *Richardson*, the court reasoned that the *Monell* claim and the surviving

---

[3] There is also no discrete *benefit* to the interests of justice—now that Defendants have initiated an interlocutory appeal—to deferring appellate review of the *Monell* issue until after the final judgment in the trial court.
[4] In the interest of judicial economy, Plaintiffs have not asked the Court for certification of any other issues determined by the summary judgment ruling.

11

§ 1983 claim against the individual defendant were "inextricably interrelated" because, if the individual defendant was found not to have violated the plaintiff's constitutional rights, the *Monell* claim would become moot. *Id.* at *2. However, *Richardson* is distinguishable because, unlike this case, there was no already-pending interlocutory appeal requiring involvement of the Court of Appeals and a stay of the trial court proceedings, and thus the burdens of a pre-trial *Monell* appeal were significantly greater than presented here. In other words, entering a partial final judgment in *Richardson* would have created a new interlocutory appeal (where one did not already exist) on an issue that may have become moot and therefore required no involvement from the Court of Appeals in the entire case. Here, on the other hand, the Court of Appeals is already involved in this case and, as explained above, allowing an appeal on the *Monell* issue now significantly advances the interest of judicial economy. This benefit far outweighs the contingent possibility that the *Monell* claim could become moot. Accordingly, *Richardson* is not apposite here.

## CONCLUSION

Appellate review of the Monell issue now may well have a profound impact on the shape of the case that is returned to this court following the appeal initiated by Defendants. Reducing the likelihood of piecemeal litigation is always a benefit to judicial economy. For the foregoing reasons, the Court should direct entry of final judgment as to Plaintiffs' *Monell* claim (the Second Count of Plaintiffs' Third Amended Complaint) and determine under Rule 54(b) that there is no just reason for delay.

**THE PLAINTIFF, WILSON RAMOS, AS ADMINISTRATOR OF THE ESTATE OF JOSE A. MALDONADO, and INDIVIDUALLY**

**By: /s/ Zachary J. Phillipps**
**David M. Cohen, Esq. (ct06047)**
**Leonard M. Braman, Esq. (ct30091)**
**Zachary J. Phillipps, Esq. (ct30047)**
**WOFSEY, ROSEN, KWESKIN**
**& KURIANSKY, LLP**
**600 Summer Street**
**Stamford, CT  06901**
**Tel: (203) 327-2300**
**Fax: (203) 967-9273**
**Email: dcohen@wrkk.com**
**Email: lbraman@wrkk.com**
**Email: zphillipps@wrkk.com**

## CERTIFICATION

      I hereby certify that on July 31, 2019, a copy of the foregoing was filed electronically and served by email on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by email or regular mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

**Thomas R. Gerarde, Esq.**
**Alan Raymond Dembiczak, Esq.**
**Beatrice S. Jordan, Esq.**
**Howd & Ludorf, LLC**
**65 Wethersfield Avenue**
**Hartford, CT 06114-11921**
**Ph:     (860) 249-1361**
**Fax:   (860) 249-7665**
**Email: tgerarde@hl-law.com**
**Email: adembiczak@hl-law.com**
**Email: bjordan@hl-law.com**

**James N. Tallberg, Esq.**
**Dennis M. Durao, Esq.**
**Karsten & Tallberg, LLC**
**500 Enterprise Drive, Suite 4B**
**Rocky Hill, CT 06067**
**Ph:     (860) 233-5600**
**Fax:   (860) 233-5800**
**Email: jtallberg@kt-lawfirm.com**
**Email: ddurao@kt-lawfirm.com**

**Michael Brave, Esq.**
**17800 N. 85th Street**
**Scottsdale, AZ  85255**
**Email:  brave@axon.com**

                                                /s/ Zachary J. Phillipps
                                                **Zachary J. Phillipps, Esq. (ct30047)**